UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION


- - - - - - - - - - - - - - - - - - -x
IN RE:  VIJAY K. TANEJA,                :    CASE NO. 08-13293
                                       :
          Debtor.                      :     (Chapter 11)
- - - - - - - - - - - - - - - - - - -x


                         Friday, May 15, 2009

                         U.S. Bankruptcy Court

                         Alexandria, Virginia


     The above-entitled matter came on to be heard before THE

HONORABLE STEPHEN S. MITCHELL, Judge in and for the

United States Bankruptcy Court, for the Eastern District of

Virginia, Alexandria Division, beginning at approximately

1:30 o'clock, p.m.


                    *  *  *  *  *

Page 2

APPEARANCES:
For the Chapter 11 Trustee:
    REBECCA SIATTA, ATTORNEY AT LAW
For the Official Committee of Unsecured Creditors:
    JOHN FARNUM, ESQUIRE
For Virginia Commerce Bank:
    BRIAN KENNEY, ESQUIRE
For Chevy Chase Bank:
    PAUL SWEENEY, ESQUIRE
For Wells Fargo Bank:
    DEREK SUGIMURA, ESQUIRE
For EMC Mortgage Corporation:
    MARTHA HULLEY, ATTORNEY AT LAW
For GMAC:
    JOHN SMITH, ESQUIRE
    PAUL BELGARD, ESQUIRE

For SunTrust Bank:

    KEVIN HILDEBEIDEL, ESQUIRE

For GHA, Inc.:

    TIMOTHY McGARY, ESQUIRE

For Vena Maharaj, et al:

    ANN SCHMITT, ATTORNEY AT LAW

* * * * *

Page 3

1              P R O C E E D I N G S
2          THE COURT:  Good afternoon.  Please be seated.
3  We'll call our 1:30 matters.
4          THE CLERK:  Vijay K. Taneja, Case Number 08-13293.
5          MS. SIATTA:  Good morning, Your Honor.  Rebecca
6  Siatta here on behalf of the trustee, Mr. Gold.
7          MR. FARNUM:  John Farnum on behalf of the
8  committee.
9          MR. KENNEY:  Good afternoon, Your Honor.  Brian
10 Kenney for Virginia Commerce Bank.
11         THE COURT:  Okay.
12         MS. SIATTA:  Your Honor, I think we can for the
13 most part take the docket in the order that it exists on the
14 Court's docket today.  The only few contested matters are at
15 the end of the docket anyway.
16         As a preliminary matter before we start, I wanted
17 to request that the Court set additional omnibus dates, if
18 the Court would be willing to do that.  Our next date in June
19 is the last omnibus date that's currently set, and that's set
20 for June 19th.
21         THE COURT:  Okay.  What I'll do is, I'll give you
22 three additional omnibus dates:  For July, July 17th at 9:30.
23 August will be August 14th at 9:30 and September would be
24 September 18th at 9:30.
25         MS. SIATTA:  Thank you, Your Honor.

Page 4

1          THE COURT:  And we will add those.  Our website
2  calendar has the omnibus dates for the Taneja matters; and
3  so, we will go ahead and add those.
4          MS. SIATTA:  Thank you, Your Honor.
5          Your Honor, the first matter on the docket is the
6  FDIC motion to extend the time to object to discharge or
7  dischargeability.  So, I will let counsel for the FDIC --
8          THE COURT:  I think a consent order was already
9  submitted and I signed this morning or yesterday
10 afternoon.  So, that has now been disposed of.
11         MS. SIATTA:  Okay.  Thank you.
12         Your Honor, the next item is the trustee's motion
13 to assume and assign the executory contract with Urban
14 Engineering.  There have been some responses filed to the
15 motion since the last hearing date and the parties are trying
16 to reach an agreement and we are optimistic that it can be
17 resolved.
18         The parties have agreed to request a 60-day
19 continuance of this matter while we continue to work towards
20 a resolution.
21         THE COURT:  Okay.  Which would take it then out to
22 the July 17th date.
23         MS. SIATTA:  Yes, Your Honor.
24         THE COURT:  At 9:30.  Okay.
25         MS. SIATTA:  Thank you, Your Honor.

Page 5

1          Docket number three is the trustee's motion to
2  approve the sale of two commercial condominium units located
3  at 11211 Waples Mill Drive in Fairfax, as well as certain
4  personal property on the premises, and the sale is requested
5  to be free and clear of all liens and other interests.  These
6  are assets that are owned by FMI.
7          Subject to court approval, the trustee has accepted
8  an offer from Wytec Providers to purchase unit 100 for the
9  price of $1,572,738.13 and unit 150 for the sale price of
10 $414,278.24.  Both contracts provide for a build-out
11 allowance to be paid to the purchaser at closing; and the
12 purchaser has also agreed to purchase all of the debtor's
13 personal property that's located on the premises.  The
14 personal property is the subject of a separate purchase
15 agreement that was also attached to the motion, and the
16 trustee is in the process of conducting an inventory of the
17 property and we will send an itemized list to the Court.
18         With respect to unit 100, Virginia Commerce Bank
19 has been collecting rent from the current tenant and the sale
20 of unit 100 per the contract terms is subject to the rights
21 of the occupying tenant.
22         There have been no objections to the motion filed;
23 and as we stated in our motion, any accrued unpaid condo
24 association dues will be paid at closing.  So, we would
25 request approval of the sale.

Page 6

1     THE COURT: Okay. I'll go ahead and grant the
2  motion. I'll show an order to be presented.
3     MS. SIATTA: Thank you, Your Honor.
4     THE COURT: You're going to do separate orders, one
5  for each unit?
6     MS. SIATTA: We could do that, if Your Honor would
7  prefer.
8     THE COURT: It might be better to do it that way.
9     MS. SIATTA: We'll do that. Thank you.
10    Number four is the trustee's motion for an order
11 authorizing the 2004 examination of Citigroup Global Markets.
12 Like some of the other 2004 motions that have recently been
13 filed, the motion requests that the Court authorize
14 production of certain bank records from Citigroup Global that
15 are necessary as part of the forensic investigation that's
16 being conducted. There have been no objections filed; and
17 so, we request entry of an order.
18    THE COURT: Okay. I'll grant the motion. I'll
19 show an order to be presented.
20    MS. SIATTA: Thank you, Your Honor.
21    Number five is similar. It's a joint motion of the
22 committee and the trustee for an order authorizing the
23 examination of Scottrade, Incorporated. Again, these are for
24 bank records that are necessary for the investigation. No
25 objections have been filed. We would request that the motion

Page 7

1  be granted.
2     THE COURT: Okay. I'll grant the motion. I'll
3  show an order to be presented.
4     MS. SIATTA: Thank you, Your Honor.
5     THE COURT: You're welcome.
6     MS. SIATTA: Number six is the third 2004 motion
7  for BB&T and I believe that a consent order has been
8  submitted to the Court with respect to this motion.
9     THE COURT: That's right. I'm sorry. Yes, it has
10 been. I believe the order is either in B.O.P.S. right now or
11 I may have signed it earlier today; but in any event, I will
12 show that it has been resolved by a consent order.
13    MS. SIATTA: Yes. Thank you, Your Honor.
14    The next item is the sale motion, property located
15 at 5335 Summit Drive and this matter has been set for the
16 Court's oral ruling.
17    THE COURT: Right.
18    MR. SWEENEY: Good afternoon, Your Honor. Paul
19 Sweeney on behalf of Chevy Chase Bank.
20    MR. SUGIMURA: Derek Sugimura on behalf of Wells
21 Fargo.
22    MS. HULLEY: Martha Hulley on behalf of EMC
23 Mortgage Corporation.
24    MR. SMITH: John Smith on behalf of GMAC.
25    THE COURT: Okay. And we don't have Midland's

Page 8

1  counsel here?
2     (No response.)
3     THE COURT: I guess not. Okay.
4     Before the Court are the objections of five
5  mortgage companies to the motion of H. Jason Gold, the
6  Chapter 11 trustee, to sell a parcel of real estate located
7  5335 Summit Drive, Fairfax, Virginia, which I will refer to
8  as the Summit Drive property, free and clear of liens.
9     The objecting parties whom I will refer to
10 collectively as the Summit Drive creditors, are Chevy Chase
11 Bank, FSB, EMC Mortgage Corporation, GMAC Mortgage, LLC,
12 Midland Mortgage Company and Wells Fargo Bank, N.A.
13    The objectors assert that they are entitled to
14 equitable liens or alternatively a constructive trust against
15 the Summit Drive property on account of loans they purchased
16 on the intended security of deeds of trust that the debtor
17 fraudulently did not record.
18    By a prior order, I approved the sale free and
19 clear of liens with a claimed equitable interest, if any,
20 attaching to the proceeds of sale.
21    After opportunity for discovery, an evidentiary
22 hearing was held on January 30, 2009 to determine the
23 validity and enforceability of the claimed equitable liens.
24    This ruling constitutes my findings of fact and
25 conclusions of law under Rule 52 (a) of the Federal Rules of

Page 9

1  Civil Procedure as incorporated by Rule 7052 of the Federal
2  Rules of Bankruptcy Procedure.
3     This is a tale of rather astonishing fraud
4  involving six notes and six deeds of trust, only one of which
5  however was recorded and it was released by the holder of one
6  of the notes after that note was paid off.
7     On June 9, 2009, Vijay Taneja and four companies
8  controlled by him filed voluntary petitions in this court for
9  reorganization under Chapter 11 of the Bankruptcy Code. The
10 four companies were Elite Entertainment, Inc., Financial
11 Mortgage, Inc., which played a major role in this matter, NRM
12 Investments, Inc. and Taneja Center, Inc. All the cases are
13 being jointly administered.
14    H. Jason Gold has been appointed as the Chapter 11
15 trustee in all five cases.
16    On September 19, 2008, the trustee filed a motion
17 to establish procedures for the auction sale of the debtor's
18 residence located at 5335 Summit Drive, Fairfax, Virginia.
19    Prior to bringing the motion, the trustee had
20 obtained a title report that showed no current liens against
21 the property but did reflect a memorandum of lis pendens that
22 had been filed by Wells Fargo on April 17, 2008 with respect
23 to a pending action in the United States District Court for
24 the Eastern District of Virginia.
25    That memorandum described the "general object of

1   cause" as follows: To recover funds fraudulently obtained
2   from plaintiffs through the fraudulent issuance of multiple
3   mortgage loans secured by the same properties in the sum of
4   at least $3,367,000 plus interest, for an award of exemplary
5   damages resulting from such fraud and false representations,
6   for prejudgment attachment of defendant's assets and such
7   other relief as the court may deem proper.
8          The suit itself which had been filed on April 8,
9   2008 named both Mr. Taneja and FMI, Financial Mortgage, Inc.,
10  as defendants.
11         The complaint asserted claims for fraud with
12  respect to two loans Wells Fargo had purchased from FMI, one
13  of which was secured by Mr. Taneja's "primary residence in
14  Fairfax, Virginia," although the address of that is not given
15  in the complaint, and the other on a property located in
16  Woodbridge, Virginia.
17         Among other allegations in the complaint is the
18  following.  This is from paragraph 67.  Despite FMI's
19  representations, warranties and covenants, the loans sold to
20  Wells Fargo were not recorded and therefore Wells Fargo's
21  interest in the property securing the loans were not secured.
22         The complaint sought in addition to compensatory
23  and punitive damages, specific performance to compel FMI to
24  repurchase the loans, prejudgment attachment of Mr. Taneja's
25  and FMI's bank accounts and injunctive relief in the form of

1   an order "requiring FMI to record the mortgages and loans on
2   the Fairfax property and the Woodbridge property in order to
3   perfect the security interest securing the notes."
4          Objections to the trustee's proposed sale of the
5   Summit Drive property were filed by Wells Fargo, GMAC, Chevy
6   Chase and Midland.
7          Following a hearing, an order was entered on
8   October 23, 2008, approving an auction sale to be held on
9   November 20, 2008 with a further hearing to be held on
10  November 21, 2008 to approve the winning bid, and a still
11  later hearing on the objections.
12         At the November 21st hearing, at which counsel for
13  EMC appeared and also objected to the sale, the Court
14  approved the sale of the property for $4,068,750 with a
15  claimed equitable interest, if any, attaching to the proceeds
16  of sale.
17         At the time of the disputed loan transactions,
18  record title to the Summit Drive property was in the name of
19  Vijay Taneja.  Mr. Taneja subsequently conveyed the property
20  to himself and his wife, Deepti Taneja, as tenants by the
21  entirety by deed of gift dated September 26, 2007 and
22  recorded the following day.
23         After the trustee filed the sales motion, the
24  transfer to Mrs. Taneja was set aside as a fraudulent
25  conveyance by a consent order entered on December 16, 2008.

1          Among his many business ventures, Mr. Taneja owned
2   and operated FMI which made mortgage loans.  The company's
3   operation was explained as follows in an agreed statement of
4   facts filed in connection with Mr. Taneja's guilty plea to
5   federal money laundering charges:
6          "According to its business plan, FMI originated
7   home mortgages and then sold them to investors in the
8   secondary mortgage market on a servicing release basis. As a
9   general rule, FMI would obtain a purchaser of the loan prior
10  to the first payment becoming due."
11         "In order to facility its business, FMI maintained
12  what is referred to as a warehouse line of credit with
13  various financial institutions.  Under the typical warehouse
14  lending agreement, the warehouse lender advanced to FMI funds
15  used for the mortgage and FMI was committed to sell the loan
16  within 90 days of closing.  Once the loan was sold, the
17  warehouse line of credit was replenished according to the
18  terms of the agreement."
19         On various dates in February 2007, FMI sold to each
20  of the five objectors before the Court what purported to be
21  2,950,000-dollar loans that FMI had made to Mr. Taneja on
22  January 25, 2007, secured by deed of trust against the Summit
23  Drive property.
24         Although the evidence is not entirely clear, it
25  appears that each lender received as part of the loan closing

1   package an original promissory note and a purported certified
2   true copy of a signed deed of trust.
3          The deed of trust copies, none of which contained
4   any recording information, each show Mr. Taneja as the
5   borrower and grantor; FMI as, curiously, both the lender and
6   the trustee, and Mortgage Electronic Registration Systems,
7   Inc., sometimes known as MERS, as "nominee for lender and
8   lender's successors and assigns" as the beneficiary of the
9   deed of trust.
10         In addition to the notes held by the five objecting
11  parties before the Court today, there was a sixth note that
12  was sold to IndyMac Federal Bank, F.S.B.  IndyMac's note was
13  secured by a deed of trust that was in fact recorded on
14  February 1, 2007 and contained a notation that the
15  transaction was a refinance of an earlier deed of trust.
16  That deed of trust, according to the title report prepared
17  for the trustee, had secured a loan in the amount of
18  $2,900,050 made by Branch Banking and Trust Company.
19         In any event, IndyMac's note was paid off on or
20  about May 1, 2007 by a total of five checks, totaling
21  $2,963,217.46, drawn on the account of NRM Investments, Inc.
22  which, as noted, is another of Mr. Taneja's companies.
23         On July 24, 2007, MERS as the beneficiary of the
24  deed of trust executed a certificate of satisfaction which
25  referenced a loan number corresponding to the one reflected

Page 14

1    on IndyMac's account records and that certificate of
2    satisfaction was then recorded on August 1, 2007.
3         The recording of the certificate of satisfaction
4    left the property with no encumbrances of record on the date
5    Mr. Taneja's bankruptcy petition was filed.
6         Mr. Taneja continued to make regular payments on
7    the notes held by the Summit Drive creditors until his bank
8    accounts were frozen as a result of the attachment obtained
9    by Wells Fargo.  That was in approximately April of 2008.
10        Those are the essential facts.  Now, we heard a lot
11   of evidence that day and, as will be explained, I don't think
12   the outcome is affected by a lot of the other evidence that
13   was presented which went to show the good faith of the
14   objecting creditors in acquiring these loans, the lack of any
15   indication that they were being imposed upon by a major
16   scheme of fraud here, and setting forth also the amounts due
17   on the loans at the time.
18        I simply note that to the extent that any party
19   here believes that additional findings are necessary in order
20   to sustain that party's position on appeal, the parties are
21   always free to avail themselves of the somewhat underused
22   Rule 52 (b) motion to make additional findings of fact; and
23   certainly, if such a motion is filed, I will consider it.
24        The respective legal positions of the parties may
25   be simply stated although not so simply resolved.

Page 15

1         The Summit Drive creditors contend that their liens
2    although unperfected on the date the bankruptcy was filed
3    cannot be defeated by the trustee under his strong-arm powers
4    because the recorded notice of lis pendens prevents him from
5    obtaining the status of a bona fide purchaser for value.
6         They further contend that in light of the debtor's
7    fraud in selling them loans that were misrepresented to be
8    secured by first-lien deeds of trust on the property they
9    should be recognized as beneficiaries of a constructive trust
10   on the property which is superior to any interest of the
11   bankruptcy trustee.
12        The trustee's position in a nutshell is that any
13   equitable claims the objecting creditors have are trumped by
14   his statutory strong-arm powers as a hypothetical bona fide
15   purchaser of real estate from the debtor or hypothetical
16   judgment lien creditor and that even if he could be charged
17   by reason of the recorded memorandum of lis pendens with
18   constructive knowledge of Wells Fargo's claimed lien any such
19   lien would be avoidable as a preference.
20        The questions therefore that I must resolve are the
21   following:
22        First, do the trustee's statutory strong-arm powers
23   as a hypothetical bona fide purchaser for value and
24   hypothetical judgment lien creditor trump the unrecorded
25   equitable claims of the objecting creditors?

Page 16

1         Second, is Wells Fargo's position distinguishable
2    from that of the other objecting creditors because of the
3    memorandum of lis pendens?
4         Third, did the memorandum of lis pendens actually
5    provide constructive notice of the equitable interest Wells
6    Fargo now asserts when the description of the cause of action
7    included with a claim for monetary relief; and fourth, if it
8    did, would any relief in favor of Wells Fargo nevertheless be
9    avoidable as a preference since the memorandum of lis pendens
10   was recorded within 90 days before the filing of the
11   bankruptcy petition?
12        I will address each of these questions in order.
13   First, the filing of a bankruptcy petition creates an estate
14   composed of, among other things, all legal or equitable
15   interest of the debtor in property as of the commencement of
16   the case.  That's from Section 541 (a) (1) of the Bankruptcy
17   Code.
18        This is subject to the qualification, however, that
19   property in which the debtor holds as of the commencement of
20   the case only legal title and not an equitable interest
21   becomes property of the estate under Subsection (a) (1) or
22   (2) -- and I want to stress those words, under Subsection (a)
23   (1) or (2) of this section only to the extent of the debtor's
24   legal title to such property but not to the extent of any
25   equitable interest in such property that the debtor does not

Page 17

1    hold.  That's from Section 541 (d) of the Bankruptcy Code.
2         Put another way, a bankruptcy trustee who is
3    claiming under Section 541 (a) (1) as successor to the debtor
4    cannot acquire any greater rights in property than the debtor
5    had and the trustee takes the debtor's property subject to
6    any equities in favor of third parties.
7         Property of the estate, however, is not limited to
8    property of the debtor.  It also includes under Section 541
9    (a) (3) property or interest that the debtor does not own but
10   that the trustee is able to recover for the benefit of
11   creditors under one or more of his special avoidance powers.
12   See In re: Cascade Oil Company, Inc., 65, Bankruptcy Reporter
13   35.  Among such avoidance powers are the so-called strong-arm
14   powers in Section 544 (a) of the Bankruptcy Code.
15        In particular, the trustee has rights as a
16   hypothetical purchaser of real estate and hypothetical
17   judgment lien creditor.
18        Specifically, the statute provides: "The trustee
19   shall have as of the commencement of the case and without
20   regard to any knowledge of the trustee or of any creditor the
21   rights and powers of or may avoid any transfer of property of
22   the debtor or any obligation incurred by the debtor that is
23   voidable by a creditor that extends credit to the debtor at
24   the time of the commencement of the case and that obtains at
25   such time and with respect to such credit a judicial lien on

Page 18

1  all property on which a creditor on a simple contract could
2  have obtained such a judicial lien whether or not such
3  creditor exists and a bona fide purchaser of real property
4  other than fixtures from the debtor against whom applicable
5  law permits such transfers to be perfected that obtains the
6  status of a bona fide purchaser and has perfected such
7  transfer at the time of the commencement of the case whether
8  or not such a purchaser exists."
9        Simply stated, the bankruptcy trustee is in the
10  same position with respect to real estate as if he were a
11  bona fide purchaser who bought the property from the debtor
12  on the filing date and simultaneously perfected the transfer
13  by recording a deed or if he had extended credit to the
14  debtor on the filing date and on the same date had obtained a
15  judgment lien against the property.
16        Thus, if under Virginia law a creditor who had
17  docketed a judgment lien against the debtor on June 9, 2008
18  or a bona fide purchaser who had bought the Summit Drive
19  property from the debtor on June 9, 2008 and recorded a deed
20  the same day would have taken free and clear of the
21  unrecorded deeds of trust of the five objecting creditors.
22  So does the bankruptcy trustee.
23        The outcome, it must be stressed, is not affected
24  by the claimed assertions of a constructive trust unless
25  under state law a constructive trust would trump the interest

Page 19

1  of a bona fide purchaser or a judgment lien creditor; nor for
2  that matter is it affected by the statutory exclusion from
3  the bankruptcy estate of property held by the debtor in trust
4  for another.  That exclusion which is in 541 (d) is by its
5  expressed terms applicable only to property coming into the
6  bankruptcy estate under Sections 541 (a) (1) and (2) of the
7  Bankruptcy Code.
8        The exclusion does not reference and has no
9  applicability to property coming into the bankruptcy estate
10  under Sections 541 (a) (3) and (4) through exercise of the
11  trustee's avoidance powers.
12        The result is that bankruptcy trustees may and
13  routinely do use their avoidance powers to set aside not for
14  the benefit of the debtor but for the benefit of creditors
15  unperfected security interests and unrecorded conveyances
16  even though such security interests and conveyances could be
17  enforced against the debtor under state law.
18        As a result, it is unnecessary to reach the issue
19  of whether the Summit Drive creditors would have been
20  entitled to imposition of a constructive trust had bankruptcy
21  not intervened.
22        The Summit Drive creditors cite to Judge Tice's
23  opinion in Old Republic National Title Insurance Company v.
24  Tyler at 206 Bankruptcy Reporter 394 which was affirmed by
25  the 4th Circuit at 155, Federal 3rd, 718.

Page 20

1        The objecting parties cite that case otherwise
2  known as In re: Dameron for the proposition that a bankruptcy
3  court may recognize and impose a constructive trust that
4  effectively removes property from the bankruptcy estate.
5        However, Dameron did not involve a contest between
6  the trustee's avoidance powers and the claimed beneficial
7  owners of funds which were held by the debtor who was a real
8  estate settlement attorney in an escrow account.
9        The trustee in Dameron was claiming title to the
10  funds solely in his capacity as successor to the debtor.
11        More importantly, in affirming the result reached
12  by Judge Tice, the Court of Appeals did not rely on a
13  constructive trust theory but instead held that the funds
14  were held by Mr. Dameron in an expressed trust.  That's 155,
15  Federal 3rd, at pages 722 to 724 and footnote five.
16        Indeed, it is telling that the real estate lenders
17  who prevailed before Judge Tice defended their victory on
18  appeal not by arguing for a constructive trust but by arguing
19  that an expressed trust had been created.  That's from the
20  Dameron opinion, 155, Federal 3rd, at 722.
21        As this Court has previously observed, a
22  constructive trust by elevating one creditor or groups of
23  creditors above others based on the supposed moral
24  superiority of their claims is fundamentally at odds with the
25  general goals of the Bankruptcy Code and should not be

Page 21

1  imposed cavalierly.  That's from U.S. Lands Systems
2  Corporation, 235, Bankruptcy Reporter, 847.
3
4        In that decision, I went on to note: "In the
5  Bankruptcy Code, Congress has provided a carefully crafted
6  scheme of distribution which seeks to recognize the central
7  principle of a quality of distribution while providing for
8  those priorities in payments which Congress has determined to
9  be consistent with sound bankruptcy policy."
10        Now, U.S. Lands Systems is somewhat unusual.  I
11  actually did recognize a constructive trust in that case but
12  it was basically to provide relief where there had been a
13  statutory trust arising from a violation of ERISA but the
14  funds although in existence on the filing date had then been
15  spent and all I was left with was the proceeds from the sale
16  of the business ultimately by the trustee and I imposed a
17  constructive trust on the unencumbered proceeds of the sale
18  of the business with respect to money that had been withheld
19  from the employees' wages and which under the ERISA
20  regulations at the moment they were withheld became property
21  of the 401(k) plan.  I imposed a constructive trust for that
22  purpose.
23        The position of the objecting creditors in this
24  case is essentially no different from that of a similarly
25  unlucky mortgage lender in a previous case decided by this

1   Court, Mayer v. United States, In re: Reasonover, 236,
2   Bankruptcy Reporter, 219.  It was vacated and remanded by the
3   4th Circuit at 238, Federal 3rd, 414, and the opinion on
4   remand is at 2001, Westlaw, 1168181.
5          In Reasonover, the debtor was in the business,
6   among others, of buying distressed houses, fixing them up and
7   selling them for a profit.
8          Some considerable time before filing bankruptcy,
9   the debtor had conveyed one such property to a corporation
10  which she had an interest in and the corporation then
11  conveyed it to an individual who financed the purchase with a
12  mortgage loan.
13         For whatever reason, a deed from the debtor to the
14  corporation was either not executed or if executed was not
15  recorded with the result that there was a break in the chain
16  of title, a fact that was discovered only after the purchaser
17  had defaulted and the mortgage company had bid in the
18  property at the foreclosure sale.
19         The lender then brought a state court action to
20  establish its title to the property.  By then the debtor was
21  in bankruptcy and the Chapter 7 trustee, Robert Mayer, now
22  one of the judges of this court, obtained a stay of the state
23  court proceeding, sold the property free and clear of liens,
24  escrowed the sales proceeds and brought an avoidance action
25  in this court against the lender as well as the United States

1   which held a criminal restitution judgment against the debtor
2   for fraud unrelated to the transaction in question.
3          This court held that the trustee's strong-arm
4   powers as a hypothetical bona fide purchaser of real property
5   trumped any equitable interest in favor of the lender with
6   the exception of a claim of equitable subrogation with
7   respect to one of the two deeds of trust that the lender's
8   funds had paid off.  A release of that deed of trust had not
9   yet been recorded on the date the bankruptcy petition was
10  filed.
11         As I noted in that opinion: Under the Virginia
12  recording statutes unrecorded conveyances and deeds of trust
13  are "void as to all purchasers for valuable consideration
14  without notice, not parties thereto and lien creditors."
15  That's Section 55-96 (a) (1) of the Code of Virginia.
16         Furthermore, it is well established in Virginia
17  that a bona fide purchaser takes property free of any latent
18  equity against it.  I cited in support of that proposition
19  three Virginia cases.  The first is Snyder v. Grand Staff,
20  96, Virginia, 473, which held that a bona fide purchaser was
21  not affected by the latent equity of reformation grounded on
22  mutual mistake; Ransome v. Watson, 145, Virginia 669, which
23  held that a resulting trust was not good against a bona fide
24  purchaser, and Pear v. Rook, 195, Virginia, 196, which held
25  the same with respect to a constructive trust.

1          Thus, it is clear that under Virginia law a bona
2   fide purchaser for value takes free and clear of the type of
3   equitable claims that the five objecting creditors have here
4   and accordingly the trustee under his strong-arm powers does
5   the same.
6          A little bit of history on Reasonover.  As I noted,
7   the opinion was affirmed by the District Court but was
8   vacated and remanded by the Court of Appeals to consider the
9   effect of Section 550 (b) of the Bankruptcy Code which
10  provides a defense to recovery of an avoided transfer by any
11  transferee subsequent to the initial transferee if that
12  subsequent transferee took for value in good faith and
13  without knowledge of the avoidability of the transfer.
14         On remand, I held that Section 550 (b) did not
15  apply where avoidance of a lien was at issue since avoidance
16  provided the trustee with a complete remedy and there was no
17  need then to seek recovery under Section 550.
18         In a subsequent opinion in another case, the 4th
19  Circuit came to the same conclusion.  That's Coleman v.
20  Community Trust Bank, 426, Federal 3rd, 719.
21         Reasonover compels, I believe, a holding here that
22  whatever equitable claims the Summit Drive creditors might
23  have been able to enforce against the debtor outside of
24  bankruptcy simply cannot be enforced against the trustee in
25  his capacity as a hypothetical bona fide purchaser for value.

1          The only wrinkle here is whether -- and this would
2   apply solely with respect to Wells Fargo -- the recording of
3   the memorandum of lis pendens would be sufficient outside of
4   bankruptcy to prevent a purchaser from achieving the status
5   of a bona fide purchaser for value.
6          In Virginia, to obtain the status of a bona fide
7   purchaser one must have neither actual nor constructive
8   notice of any defects in the chain of title.  That's from
9   Roanoke Brick and Lime Company v. Simmons, 20, Southeast
10  Reporter, 955.
11         In making a purchase, the buyer must search the
12  chain of title as required by the recording statutes and
13  exercise a degree of care when examining the records to
14  ensure that the grantor has good title and that the property
15  is free of encumbrance.
16         "The great weight of authority is to the effect
17  that the recordation of an instrument gives constructive
18  notice of all of the facts expressly stated in the instrument
19  and other matters therein suggested which might be disclosed
20  upon prudent inquiry."  That's from Chavis v. Gibbs, 198,
21  Virginia, 379.
22         In Virginia, the common law doctrine of lis pendens
23  under which a purchaser of real property was bound by the
24  judgment in any suit pending on the date he or she acquired
25  title has been modified by statute.

1    Specifically, Section 8.01-268 of the Code of
2  Virginia provides that:  No lis pendens or attachment shall
3  bind or affect a subsequent bona fide purchaser of real or
4  personal estate for valuable consideration and without actual
5  notice of such lis pendens or attachment until and except
6  from the time a memorandum setting forth the title of the
7  cause or attachment, the general object thereof, the court
8  wherein it is pending, the amount of the claim asserted by
9  the plaintiff, a description of the property, the name of the
10  person whose estate is intended to be affected thereby and in
11  an action to enforce a zoning ordinance a description of the
12  alleged violation shall be admitted to record in the clerk's
13  office of the circuit court of the county or the city wherein
14  the property is located.
15    The statute further provides: No memorandum of lis
16  pendens shall be filed unless the action on which the lis
17  pendens is based seeks to establish an interest by the filing
18  party in the real property described in the memorandum or
19  unless the action in which the lis pendens is based seeks to
20  enforce a zoning ordinance.
21    Under Virginia law, the filing of a memorandum of
22  lis pendens operates to give constructive notice to any
23  prospective purchaser that the rights which he or she may
24  acquire will be subject to any valid judgment entered in the
25  underlying litigation.

1    As the 4th Circuit has explained: Under Virginia
2  law, the filing of a memorandum of lis pendens neither
3  creates nor enforces a lien.  Rather a lis pendens serves
4  merely "as notice of the pendency of the suit to anyone
5  interested and a warning that he should examine the
6  proceedings therein to ascertain whether the title to the
7  property was affected or not by such proceedings."  That's
8  from Green Hill Corporation v. Kim, 842, Federal 2nd, 742;
9  and the quotation within the quotation comes from a Virginia
10  case, Harris v. Lipson, 167, Virginia, 365.
11    There can be little doubt that constructive notice
12  precludes a trustee from exercising the avoidance powers of a
13  bona fide purchaser of real property.
14    The 4th Circuit in an unpublished opinion has held
15  that while actual knowledge does not affect the trustee's
16  strong-arm powers as a bona fide purchaser, constructive
17  notice prevents the trustee from claiming such an avoidance
18  power.  That's In re: Mahaffey, 91, Federal 3rd, 131.  It's a
19  table decision.
20    The 4th Circuit has also held in the same case that
21  state law determines whether the trustee has constructive
22  notices for bona fide purchaser status.
23    Other lower courts within the 4th Circuit have
24  consistently held that if a trustee has constructive notice
25  under state law the trustee does not have avoidance power as

1  a bona fide purchaser under Section 544 (a) (3).  See for
2  example In re: Sudds, 355, Bankruptcy Reporter 525; In re:
3  Morgan, 96, Bankruptcy Reporter, 615, at least those two
4  cases.  The first one is from the Middle District of North
5  Carolina.  The second one is from the Northern District of
6  West Virginia.
7    There remains, however, the question of exactly
8  what constructive notice would have been provided by the lis
9  pendens in this case.
10    Although the suit itself sought injunctive relief
11  to compel FMI to record the deed of trust securing the note
12  that Wells Fargo bought, that relief was not identified
13  within the "general object of cause as set forth in the
14  memorandum of lis pendens."  The memorandum really referred
15  only to recovery of money judgment for which a lis pendens
16  does not lie in Virginia.
17    It is true that the memorandum does also mention
18  prejudgment attachment of defendant's assets but the suit
19  sought attachment only of bank accounts, not of real
20  property.
21    The question then is whether the failure to
22  expressly state in the memorandum any claim to an interest in
23  the real property defeats whatever constructive notice might
24  otherwise arise from the recording of the memorandum.
25    No Virginia case seems to have addressed this issue

1  precisely.  The Supreme Court of Virginia has explained
2  that -- and in this case it was construing the predecessor of
3  this statute but the terms were essentially the same, that
4  because this is a remedial statute, in construing it there
5  should be kept in mind the old law, the mischief intended to
6  be remedied and the remedy.  That's from Vickers v. Sallier,
7  111, Virginia, 307.
8    The mischief according to the Virginia Supreme
9  Court that was intended to be remedied was the common law
10  rule that the purchaser was bound by the judgment of any
11  pending suit at the time of the purchase even in those cases
12  in which there was a physical impossibility that the
13  purchaser could know with any possible diligence on his part
14  of the existence of the suit and that such a rule was harsh
15  in its effects upon bona fide purchasers.
16    One of the objects of the legislature, says the
17  Virginia Supreme Court, in enacting this provision of law
18  "manifestly was to provide a means by which a person desiring
19  to purchase land might by an examination of the deed books in
20  the county where the land was situated ascertain whether or
21  not there was pending a suit which might affect the title to
22  the land."
23    Now, the actual issue in that case was the
24  technical one of if in fact the memorandum had been recorded
25  but it had not been properly indexed, did it provide

Page 30

1    constructive notice; and the court held it did not provide
2    constructive notice because the whole remedial purpose of the
3    statute was to allow someone to determine from the land
4    records whether there was a problem, and if it wasn't in the
5    index you couldn't find it in the deed book.
6         But neither that decision or any other decision
7    really states whether a misstatement or failure to state in
8    the memorandum of the lis pendens the exact nature of the
9    interest in real property that was intended to be established
10   in the suit vitiates constructive notice.
11        I do note that quote from Harris v. Lipson, 167,
12   Virginia, 365, at page 372 states that the lis pendens in the
13   attachment proceeding was merely a notice of the pendency of
14   the suit to anyone interested and a warning that he should
15   examine the proceedings therein to ascertain whether the
16   title to the property was affected or not by such
17   proceedings.
18        The issues in that case are very complicated and
19   they don't really deal with sufficiency of the statement of
20   the general purpose of the action but that language does
21   suggest that it is sufficient if the memorandum of lis
22   pendens puts one on knowledge of the suit and that at that
23   point the potential purchaser is obligated to examine the
24   suit papers themselves to determine precisely what relief is
25   being sought.

Page 31

1         So, that being the case, I conclude that so long as
2    the memorandum of lis pendens correctly identifies the
3    action, a mere deficient description in the general object of
4    the suit will defeat the constructive notice arising from the
5    recordation of the memorandum.
6         Put another way, once on constructive notice of the
7    suit, a potential purchaser is charged with constructive
8    notice of all relief sought in the suit even if that is not
9    specifically mentioned in the memorandum of lis pendens.
10        Thus, as to Wells Fargo which filed the memorandum
11   of lis pendens, I would have to conclude that the trustee's
12   strong-arm powers under Section 544 (a) (3) of the Bankruptcy
13   Code would not permit avoidance of Wells Fargo's unrecorded
14   deed of trust.
15        That, however, brings us to the question of
16   whether, since the memorandum of lis pendens was recorded
17   within the 90-day preference period, the trustee nevertheless
18   prevails over Wells Fargo.
19        Section 547 of the Bankruptcy Code allows a trustee
20   to avoid any transfer which is defined to include the fixing
21   or perfection of a lien occurring within 90 days of the
22   filing of the bankruptcy petition if the transfer is on
23   account of an antecedent debt, is made while the debtor is
24   insolvent and enables the creditor to receive more than if
25   the transfer had not been made and the creditor received a

Page 32

1    distribution under Chapter 7. The debtor is presumed to be
2    insolvent in the 90-day period prior to the filing of the
3    bankruptcy petition.
4         It is true, as the 4th Circuit has stated in Green
5    Hills v. Kim, and as the Virginia Supreme Court stated in
6    Harris v. Lipson, that the filing of a memorandum of lis
7    pendens does not operate as a transfer or create a lien.
8         In fact, in Harris v. Lipson, the party was
9    essentially suing for a wrongful attachment of his property
10   based on the filing of a notice of lis pendens; and the
11   Virginia Supreme Court said: It's not a wrongful attachment
12   because the memorandum doesn't attach anything. It just
13   provides notice. But any transfer arising from successful
14   prosecution of the suit -- that is, if a judgment is
15   ultimately obtained in favor of the party that files the
16   memorandum -- necessarily relates back to but not before the
17   date the memorandum was filed.
18        Put another way: Even if on the very day Wells
19   Fargo filed suit it had obtained the injunctive relief it
20   requested and its deed of trust had been recorded on that
21   very same date, the recording of the deed of trust would have
22   constituted an avoidable preference since the recording would
23   have occurred within the 90-day period which would have
24   perfected a lien to secure an antecedent debt thereby
25   enabling Wells Fargo, in this case, to recover more than it

Page 33

1    would recover as an unsecured creditor in this particular
2    case.
3         An interesting case, very analogous to this except
4    for the date of the recording of the memorandum of lis
5    pendens, was recently decided by the U.S. Bankruptcy Court
6    for the Southern District of Florida, In re: Whitehead,
7    reported at 399, Bankruptcy Reporter, 570.
8         In this case, the debtor executed a mortgage note
9    for $950,000 and executed a mortgage encumbering seven of his
10   properties. For whatever reason -- the opinion doesn't
11   state -- the mortgages were unrecordable and in fact were
12   never recorded; and then, the debtor filed for bankruptcy,
13   and the trustee -- well, first of all, the creditor filed
14   suit in state court to compel the recording, to correct the
15   problems with the deed mortgage and to compel the recording
16   of it, and filed a notice of lis pendens. Thereafter, the
17   debtor filed for bankruptcy.
18        In this particular case, the notice of lis pendens
19   was filed more than 90 days prior to the bankruptcy filing
20   and the creditor then came in and sought relief from the
21   automatic stay which the trustee opposed on the grounds that
22   his strong-arm powers and the automatic stay itself prevented
23   the suit from going forward; and the bankruptcy court there
24   granted relief from the stay saying that whatever relief to
25   which the creditor was ultimately entitled would relate back

Page 34

1   to the date of the memorandum of lis pendens and that since
2   that was outside the preference period the trustee could not
3   avoid it as a preference.
4        Here we have just the opposite situation.  The
5   memorandum of lis pendens is recorded within the preference
6   period; and by the reasoning set forth in the Whitehead case,
7   I would have to say that the trustee's preference avoidance
8   power would trump any claim that Wells Fargo would have here
9   under that portion of its complaint which sought to compel
10  the recording of a deed of trust securing its notes.
11       So, for the reasons stated, I conclude that none of
12  the objecting parties here have an interest in the real
13  property, the Summit Drive property, or its proceeds that is
14  superior to the interest of the trustee under his avoidance
15  powers, whether under Section 544 (a) or 547 of the
16  Bankruptcy Code, and that the trustee holds the proceeds of
17  sale free of the equitable claims of the creditors here.
18       I will direct Mr. Gold or his counsel to submit an
19  order to consistent with my ruling here today.
20       MS. SIATTA:  Thank you, Your Honor.
21       Your Honor, continuing with the docket, the next
22  matter is number eight which is U.S. Bank's motion for relief
23  from the stay relating to property located in Herndon,
24  Virginia.  The trustee filed an objection to this motion,
25  indicating he is still investigating the estate's interest in

Page 35

1   this property.
2        We have informally requested documents from U.S.
3   Bank and are working with them to get these documents.  They
4   advised me on Wednesday that they received some additional
5   documents and would be sending those over.  We have not
6   received the documents yet.
7        We have agreed with their counsel to request that
8   the Court continue this matter to the June omnibus date; the
9   preliminary hearing, please.
10       THE COURT:  Okay.  That will be June 19th at 9:30.
11       MS. SIATTA:  Thank you, Your Honor.
12       THE COURT:  You're welcome.
13       MS. SIATTA:  The next matter is number nine and
14  this is the lift-stay motion filed by GMAC, and I will let
15  their counsel address the Court.
16       THE COURT:  Okay.
17       MR. BELGARD:  Good afternoon, Your Honor.  Paul
18  Belgard for the movant, GMAC Mortgage, LLC, and Homecomings
19  Financial, LLC.
20       THE COURT:  Okay.  Go ahead.
21       MR. BELGARD:  Your Honor, a moment to confer with
22  trustee's counsel?
23       THE COURT:  Certainly.
24       (Counsel confer.)
25       MR. BELGARD:  Your Honor, trustee's counsel has

Page 36

1   filed an objection and they want a little more time to look
2   under the hood at this kind of claim.
3        We're going to go ahead and do some informal
4   discovery probably but I think we will want to continue that.
5   Originally counsel was asking for 30 days but I have a
6   conflict on that June 19th date.  So, I think we ought to
7   move it to the next omnibus date, if that's all right.
8        THE COURT:  That would be July 17th then.
9        MR. BELGARD:  Correct.
10       THE COURT:  Okay.  That will be at 9:30.
11       MR. BELGARD:  Thank you, Your Honor.
12       THE COURT:  You're welcome.
13       MS. SIATTA:  Item number ten is SunTrust Bank's
14  lift-stay motion relating to a vehicle, a 2007 Mercedes.  The
15  trustee has abandoned this property and we've advised counsel
16  for SunTrust that we're agreeable to a consent order.  We
17  received a draft of that order; and so, we are just working
18  out the details of the consent order.
19       THE COURT:  Okay.
20       MR. HILDEBEIDEL:  Good afternoon, Your Honor.
21  Kevin Hildebeidel appearing, local counsel for Glaser &
22  Glaser.  That is consistent with our understanding.  Our
23  understanding, also, is debtor's counsel did not object to
24  the relief sought and all the other creditors were noticed --
25  the 20 largest creditors rather were noticed and we didn't

Page 37

1   receive any objection from any of them.
2        THE COURT:  Okay.  Well, I'll show then an order to
3   be submitted which grants relief on whatever terms the
4   parties have agreed to.
5        MS. SIATTA:  Thank you, Your Honor.
6        MR. HILDEBEIDEL:  Thank you.
7        MS. SIATTA:  Your Honor, the remaining matters on
8   the docket, about five or six, are all Virginia Commerce's
9   motions with the exception of one motion that is GMAC's
10  motion, number 15.  So, I would turn it over to Brian Kenney
11  at this point.
12       THE COURT:  Mr. Kenney.
13       MR. KENNEY:  Thank you, Your Honor.  Brian Kenney
14  for Virginia Commerce Bank.
15       Beginning with item number eleven, this is our
16  motion for relief from the automatic stay with respect to the
17  Judicial Drive property.  When I was here last time, I asked
18  the Court to continue it to today's date because we had a
19  contract signed on the property.  That contract had kicked
20  out within the due diligence period but I am pleased to
21  report that this morning we signed another contract for the
22  Judicial Drive property; and so, with Your Honor's
23  permission, I'd like to ask to continue that two omnibus
24  hearings out, to the July 17th omnibus hearing, please.
25       THE COURT:  It will be so continued.

Page 38

1    MR. KENNEY:  Thank you, Your Honor.
2    THE COURT:  You're welcome.
3    MR. KENNEY:  The next item is item number 12,
4  Virginia Commerce Bank v. Gold.  That is Virginia Commerce
5  Bank's motion for summary judgment with respect to the
6  Century Steel lien on the Judicial Drive property.  Century
7  Steel's counsel contacted me and asked me if I would agree to
8  a continuance to the June omnibus date and I will consent to
9  that.  I would ask Your Honor to continue that to June 19th,
10 please.
11   THE COURT:  Okay.  It will be so continued.
12   MR. KENNEY:  We have agreed, just for Your Honor's
13 information, that Century Steel will file its opposition to
14 the motion by June 5th and we will file a reply memorandum by
15 June 12th.  So, successive three-week Fridays.
16   THE COURT:  Right.
17   MR. KENNEY:  Thank you, Your Honor.
18   Items 13 and 14, Your Honor, have to do with the
19 GHA liens.  I think we can take that up probably after the
20 uncontested matters because the GHA lien, item number 14, is
21 our motion for summary judgment.  I think that will take
22 about ten minutes.
23   THE COURT:  Okay.
24   MR. KENNEY:  With respect to item number 16, that
25 is a motion to shorten time for our motion for release of

Page 39

1  funds and item number 17 is the motion for release of funds,
2  to release the funds to Virginia Commerce Bank for the
3  payment of the letter of credit which secured the Judicial
4  Drive bond.  We have paid Travelers Insurance Company.
5    We filed a motion for release of the funds, to be
6  paid the proceeds of our collateral.  The trustee and the
7  committee have endorsed consent orders, both on the motion to
8  shorten time and on the motion for release of funds, and I've
9  submitted them via B.O.P.S. this morning to the Court.  So,
10 those are resolved.
11   THE COURT:  Okay.  I will grant both motions then.
12 I'll show that orders are in B.O.P.S., ready to be entered.
13   MR. KENNEY:  Thank you, Your Honor.  Should I turn
14 to the GHA motions?
15   THE COURT:  Might as well.
16   MR. KENNEY:  Okay.  Perhaps we ought to take up the
17 motion for summary judgment first before we take up the
18 discovery motion.
19   THE COURT:  Do we have counsel here for GHA?  Mr.
20 McGary.
21   MR. McGARY:  Yes.  Timothy McGary on behalf of GHA.
22   THE COURT:  Okay.  The question is whether
23 construction manager's services are lienable under the
24 Virginia mechanic lien statute.
25   MR. KENNEY:  Yes, Your Honor, an issue on which I

Page 40

1  was unable to find any direct authority on Virginia law; but
2  I think for purposes of the hearing today and for purposes of
3  our motion, perhaps it would be well to refine the issue a
4  little more which is to say:  With respect to this particular
5  property, the Judicial Drive property, can GHA have a lien
6  for construction management services where no building or
7  structure has been constructed on the property?
8    THE COURT:  And according to the summary judgment
9  motion, there has been some grading of the property.  The
10 construction has not started on the building.
11   MR. KENNEY:  That's absolutely right, Your Honor.
12 There has been grading for which William A. Hazel, Inc. is
13 claiming its own lien for grading work, and we have a dispute
14 with them.  But with respect to GHA, no construction
15 started on the property.
16   I would like to go back to the statutory language,
17 if I may, specifically Section 43-3 of the Code.  I think
18 43-3 provides us with two issues and two answers, and the
19 issues are: What do you get a lien for and what do you get a
20 lien on?
21   With respect to the first question, 43-3 says, a
22 mechanic gets a lien for the construction, removal, repair or
23 improvement of any building or structure permanently annexed
24 to the freehold; and it is our position that there is no
25 building or structure.  That's an uncontested fact; and so,

Page 41

1  we don't think they get a lien for anything for construction
2  management services here.
3    As I did point out, the William A. Hazel company is
4  maintaining its own lien for the site-improvement work under
5  Section 43-3, Subsection B.  But we don't think that GHA can
6  properly lien this job where there's no building or
7  structure.
8    The second question is, what do you get a lien on
9  under Section 43-3?  It says, assuming you have a valid lien,
10 you get a lien upon such building or structure and so much of
11 the land therewith as shall be necessary for the convenient
12 use and enjoyment thereof.  Again, no building or structure.
13 But I suggest to the Court that the phrase, "and so much land
14 therewith as shall be necessary for the convenient use and
15 enjoyment thereof" is referring to an actual building or
16 structure.
17   So, I don't think that the issue is complicated.  I
18 think the facts are uncontested.  We're asking for summary
19 judgment with respect to the GHA liens and an order pursuant
20 to Section 43-17, ordering the release of the liens.
21   Thank you, Your Honor.
22   THE COURT:  Okay.  Mr. McGary.
23   MR. McGARY:  Your Honor, with respect to the first
24 piece of the puzzle, that is whether or not you can have a
25 lien for construction management services, I think the

Page 42

1   Supreme Court of Virginia has spoken on that.  I think they
2   have spoken pretty clearly on that in the Kane case that both
3   counsel and I cite in our briefs.
4       THE COURT:  That was the architect?
5       MR. McGARY:  Yes, Your Honor; and the exact
6   language that the Virginia Supreme Court used is: "The
7   language in our statute is general in terms and in our
8   opinion embraces all persons who perform any labor.  We are
9   unable to draw a distinction between one who puts his labor
10  into plans for erection of the building and actually
11  supervises its erection and one who in the role of a
12  bricklayer or carpenter actually performs manual service."
13      Your Honor, I think that language, particularly
14  where they say it's broad, is clearly enough to bring a
15  construction manager who is supervising the work at the
16  property within the fold of the mechanics lien just as the
17  architect who does that sort of work would be within the fold
18  of the lien.
19      Your Honor, with respect to the claim that there
20  was in essence no value added, that there's no structure on
21  the property:  Your Honor, my understanding is that there was
22  grading done.  There was also some work I believe done for
23  some drainage or sewage put into the property.  So, the
24  property was improved.
25      In addition, Your Honor, my client was the one

Page 43

1   who -- I'll call it the point man to go to the county to get
2   the zoning changed from R-1 property to C-1 property which
3   increased its value.
4       Now, Your Honor, I would probably have to agree
5   with Mr. Kenney if nothing happened on that property.  But as
6   we know, Your Honor, a rezoning of a parcel of property
7   requires a site plan or a generalized development plan.  It
8   is part and parcel of that development.  So, that has added
9   value to it and the work has commenced on that.
10      If you extend Mr. Kenney's argument --
11      THE COURT:  Are you saying, for example, if I were
12  an attorney in private practice and a client came to me for
13  rezoning and I did something that enhanced the value of the
14  property that I could get a mechanics lien?
15      MR. McGARY:  No, Your Honor, I'm not saying that.
16  What I'm saying is, as part of his work with the project --
17  that is, going and getting the site plans done; going and
18  getting the building permits pulled, all the things that a
19  general contractor might or would do, and then he also
20  supervises the work when it comes to the grading and the
21  addition of the drainage and the addition of the sewage --
22  all of those things are within that ambit of the mechanics
23  lien because he has added value to that property.  He has put
24  a significant amount of time, effort and money into the
25  property.

Page 44

1       What I'm suggesting, Your Honor, is that he is in
2   the context of this case a mechanic in his efforts in
3   managing this project.  The Virginia Supreme Court has said
4   he is entitled to those fees for managing that project; and
5   Your Honor, I think that that Kane case is right on point,
6   that construction management services can in fact be the
7   subject of a mechanics lien.
8       Your Honor, I would note that the work that was
9   performed in fact performed pursuant to the AIA contract
10  as attached to his brief, that it was part and parcel of the
11  person's efforts to get the project moving, to add value to
12  it and to build the project.
13      Otherwise, Your Honor, if we say that those
14  services aren't worth anything or are not lienable, I would
15  question whether we could have a general contractor who could
16  lien the property for anything other than what a true general
17  contractor could lien a property for anything other than what
18  his subcontractors put on the property if he wasn't entitled
19  to his fees or his value in managing those subcontractors
20  because he's really doing nothing more than construction
21  management.
22      THE COURT:  Okay.  I've of course read the written
23  submissions by both parties, as well as the arguments made
24  here today.  I'm going to grant the motion for summary
25  judgment.  I think that a construction manager at least has

Page 45

1   as much right as an architect to lien for his services but
2   first of all, I do not believe that that portion of the
3   services that involves obtaining rezoning which is
4   independent of -- I mean, it may have been part of his
5   contract but you don't have to obtain rezoning.  That's not
6   intimately connected with constructing a building.  It's a
7   separate thing.  It could be done by anyone and if done by
8   anyone other than the person who calls himself the
9   construction manager it wouldn't be lienable.
10      So, I don't think that the fees for obtaining
11  rezoning approval are lienable in any event.
12      But I have to also agree with Mr. Kenney that you
13  have to have something upon which the lien attaches.
14  Virginia is very unusual.  Your mechanics lien basically
15  attaches to the improvement to the property and where you
16  have mere preparatory steps but you never actually construct
17  a building -- I don't mean it has to be completed but I think
18  it has to be started; and I don't think, when we don't have
19  an improvement here being made to the leasehold but mere
20  preparatory steps, that you can just lien the raw land.  I
21  don't think that's what the Virginia statute says.
22      So, on that basis, I'm going to grant Mr. Kenney's
23  motion for summary judgment.  If you will please submit an
24  order.
25      MR. KENNEY:  Thank you, Your Honor.  I will prepare

1  an order; and I think that makes moot the motion to compel

2  which is item number 13.

3       THE COURT:  Okay.  I guess the remaining matter

4  then is GMAC's motion for summary judgment.

5       MS. SCHMITT:  Good afternoon, Your Honor.  Ann

6  Schmitt, counsel for the Maharaj's.

7       MR. SMITH:  May it please the Court.  John Smith

8  for GMAC.

9       THE COURT:  Okay.  It's your motion.  I have read

10  the papers, by the way, both sides' papers.  So, you don't

11  have to do a long process to educate me here.

12       MR. SMITH:  Okay.  I'll start off by saying that I

13  was under the impression based upon the response to the

14  request for admissions that the deed of trust and the note

15  were authenticated and that Ms. Maharaj admitted that it was

16  her signature.

17       My understanding from the response is that the

18  Maharaj's would like to look at that paper.  I have an

19  affidavit from my client that they hold that paper, and I do

20  know that they do.  However, I don't have it with me here.

21       In talking with Ms. Schmitt, she said that she

22  would be willing to go forward, if it was the Court's

23  pleasure, on the argument today, subject to my producing that

24  note.

25       The other matters -- I think everything is stated

1  in the motion except for: She raised the question, well,

2  there's a possibility that the Maharaj's only saw the pieces

3  of paper that they signed and therefore that somehow they

4  could not know the terms of the note.

5       I went back to the request for admissions to look

6  at what papers they did sign or initial and I see that GMAC

7  Exhibit B has Vena Maharaj's initials on page one.  Now,

8  paragraph E of page one gives the terms of the loan.  So, Ms.

9  Maharaj did have a piece of paper in front of her, a legal

10  document that had she bothered to read it she could have seen

11  that the terms of the loan were there identifying it.

12       Moreover, if you look at the note payable, assuming

13  that she only saw the signature page, it's just a two-page

14  note and there is not a sentence on that second page that

15  does not include the words "this note" or "noteholder" or

16  "lender" or "borrower."  Indeed, she signed her name on a

17  line, below that line that said, "borrower," and it had a

18  notary title block on it.

19       As between the Maharaj's and my client, GMAC, the

20  Maharaj's were in the best position to stop this fraud from

21  occurring.  They're the ones that chose to sign the piece of

22  paper without bothering to read it.  Mr. Taneja asked them:

23  Come down to the office.  I've got some papers I want you to

24  sign.  And they said:  No.  We don't want to come all the way

25  to your office.  They recognized the papers were necessary

1  for a construction draw.  So, they thought the character of

2  the paper was a note that they were borrowing from but they

3  chose to meet at a gas station.  Those are circumstances that

4  were within the Maharaj's' control and they agreed to.

5       I think that it's fair to say that if they chose

6  the setting in which they signed it, they received documents

7  that said what the terms were of this loan and they chose to

8  sign it anyway, that they should be held liable for it.

9       I guess with the remainder of the items, I'll rely

10  on what's in the motion for summary judgment, unless the

11  Court wishes to hear some argument on it.

12       THE COURT:  That's fine.  Miss Schmitt.

13       MS. SCHMITT:  Thank you, Your Honor.

14       Your Honor, if I could address first the issue

15  of the note that Mr. Smith mentioned.  I just want to see

16  they've got an original signature.  There's been so much

17  fraud in this case that I'm nervous working off copies.  So,

18  if he's got the original, I'm fine with them being the holder

19  and also being a holder in due course.

20       Your Honor, if GMAC is a holder in due course and

21  we have effectively conceded that point, there are a limited

22  number of defenses and one is, as they say, fraud in the

23  factum.

24       My client, Mrs. Maharaj, thought she was signing

25  something other than what she was signing.  She was tricked

1  into signing things.

2       We have, frankly, a problem in this case because

3  she doesn't remember signing these documents.  She doesn't

4  remember seeing these documents.  She doesn't have copies of

5  these documents.

6       What she does recall is, around the same time

7  period, at a point where draw requests were pending, she was

8  asked to sign additional documents that she would need to

9  sign in order to get those draw requests.

10       Now, the fact that there may be words relating to

11  borrowers on those papers would not have necessarily told her

12  that she was signing off on a completely new note.  She was

13  in fact drawing down on an existing note that she knew about

14  and that she had signed.

15       There are a limited number of defenses here.  It is

16  not only you were tricked but she was tricked without a

17  reasonable opportunity to do something about that.  But the

18  comment doesn't say, you were tricked and you didn't read it

19  because you were blind and you didn't read it because you

20  were illiterate.  Instead it lists a whole litany of factors

21  that really go to the sophistication of the borrower, the

22  level of trust through reasonableness of the trust; and we

23  have attempted to deal with those in Mrs. Maharaj's

24  affidavit, and I would suggest to the Court that those are

25  very subjective things and they really are not the stuff of a

Page 50

1    summary judgement motion, that the Court really should be
2    given an opportunity to see Miss Maharaj, to observe her
3    demeanor and judge for yourself whether she had the level of
4    sophistication to really understand what she was doing.
5        THE COURT:  Part of the motion for summary judgment
6    seeks to basically strike one of your affirmative defenses
7    which is that FMI was acting as an agent for GMAC; and
8    according to the motion, you haven't identified any facts.
9        MS. SCHMITT:  I haven't identified that.  In fact,
10   we don't.  We're not going to push that.  That defense was
11   made at a point where we didn't have all of our documents and
12   we just really didn't know, and I think the same is true.  We
13   will concede that consideration is not a defense to a holder
14   in due course.  So, really we're just looking at the issue of
15   fraud.
16       THE COURT:  Okay.  Well, first of all, only because
17   of the whole history of this thing and not only of this case
18   but of lots of cases percolating through the Bankruptcy Court
19   right now, the issue of original notes -- I know that out in
20   the Central District of California, Judge Bufford won't even
21   grant relief from stay in consumer cases unless an original
22   note is produced in his courtroom because he has become so
23   suspicious of whether there are in fact any original notes
24   left anymore.
25       I'm going to continue this over to June 19th to

Page 51

1    give GMAC an opportunity to produce the original note and
2    show it to Miss Schmitt.
3        Subject to the fact that there is an original note,
4    I would grant the subparts A through D of the motion for
5    summary judgment and strike the third affirmative defense or
6    enter judgment for the creditor on the third affirmative
7    defense.  But I do believe that there are material facts that
8    preclude a determination of whether there is fraud in the
9    factum and that that is an issue that can only be resolved at
10   the trial.
11       So, based on those general rulings, Miss Schmitt
12   and Mr. Smith, if you can work out a form of order prior to
13   the next hearing that effectively narrows the issues, we will
14   proceed from there.  I think we are going to have to have a
15   trial on the fraud in the factum issue.
16       MS. SCHMITT:  Thank you, Your Honor.
17       THE COURT:  Okay.
18       MS. SIATTA:  Your Honor, there's one final docket
19   matter for which Mr. Gold would like to address the Court.
20       THE COURT:  Okay.
21       MR. GOLD:  Your Honor, good afternoon.  I just
22   wanted to bring to the Court's attention two filings that
23   were made recently.  There's a supplemental declaration of
24   Stephen A. Wexler in support of application to employ Marcher
25   Consultants, Inc. as operations manager and there is a joint

Page 52

1    statement in support of the continued employment of Marcher
2    Consultants, Inc. as operations manager to Chapter 11
3    trustee.  I just wanted to bring those items to Your Honor's
4    attention.  I have nothing further to add other than that
5    both the committee and myself are satisfied with Mr. Wexler's
6    declaration and we don't feel it should impact his
7    employment.
8        THE COURT:  Okay.  Is this matter set for a hearing
9    docket or is someone just going to submit an order or what?
10       MR. GOLD:  No; I don't think we need to.  It's just
11   a supplemental disclosure so the world knows about it, Your
12   Honor, any the parties interested who are served with ECF.  I
13   just want to make sure --
14       THE COURT:  So, there's no need for any particular
15   action by the Court at this point?
16       MR. GOLD:  Not at all.  That's correct.  Thank you,
17   Your Honor.
18       THE COURT:  Thank you for bringing that to my
19   attention.  Okay.  Anything further we can take up?
20       MS. SIATTA:  That concludes the docket, Your Honor.
21   Thank you.
22       THE COURT:  Okay.  Thank you.  We will stand
23   adjourned.
24       (Thereupon, at approximately 2:52 p.m., o'clock,
25   the proceedings were concluded.)

Page 53

UNITED STATES BANKRUPTCY COURT
T R A N S C R I B E R ' S   C E R T I F I C A T E
Diversified Reporting Services hereby certifies that:
(A) The foregoing pages represent an accurate and complete
transcription of the proceedings before the United States
Bankruptcy Court, the Honorable Stephen S. Mitchell, Judge,
Presiding, in the matter of VIJAY K. TANEJA (debtor), and (B)
these pages constitute the original transcript of the
proceedings.

Diversified Reporting Services, Inc.
1101 16th Street, NW
Second Floor
Washington, D.C.  20036

Court Reporter/Transcriber

**A**

**abandoned** 36:15
**able** 17:10 24:23
**above-entitled** 1:15
**absolutely** 40:11
**accepted** 5:7
**account** 8:15 13:21
  14:1 20:8 31:23
**accounts** 10:25
  14:8 28:19
**accrued** 5:23
**accurate** 53:4
**achieving** 25:4
**acquire** 17:4 26:24
**acquired** 25:24
**acquiring** 14:14
**acting** 50:7
**action** 9:23 16:6
  22:19,24 26:11,16
  26:19 30:20 31:3
  52:15
**actual** 25:7 26:4
  27:15 29:23 41:15
**add** 4:1,3 44:11
  52:4
**added** 42:20 43:8
  43:23
**addition** 10:22
  13:10 42:25 43:21
  43:21
**additional** 3:17,22
  14:19,22 35:4
  49:8
**address** 10:14
  16:12 35:15 48:14
  51:19
**addressed** 28:25
**adjourned** 52:23
**administered** 9:13
**admissions** 46:14
  47:5
**admitted** 26:12
  46:15
**advanced** 12:14
**advised** 35:4 36:15
**affect** 26:3 27:15
  29:21
**affidavit** 46:19
  49:24
**affirmative** 50:6

51:5,6
**affirmed** 19:24
  24:7
**affirming** 20:11
**afternoon** 3:2,9
  4:10 7:18 35:17
  36:20 46:5 51:21
**agent** 50:7
**agree** 38:7 43:4
  45:12
**agreeable** 36:16
**agreed** 4:18 5:12
  12:3 35:7 37:4
  38:12 48:4
**agreement** 4:16
  5:15 12:14,18
**ahead** 4:3 6:1 35:20
  36:3
**AIA** 44:9
**al** 2:21
**Alexandria** 1:3,13
  1:18
**allegations** 10:17
**alleged** 26:12
**allow** 30:3
**allowance** 5:11
**allows** 31:19
**alternatively** 8:14
**ambit** 43:22
**amount** 13:17 26:8
  43:24
**amounts** 14:16
**analogous** 33:3
**Ann** 2:23 46:5
**annexed** 40:23
**answers** 40:18
**antecedent** 31:23
  32:24
**anymore** 50:24
**anyway** 3:15 48:8
**appeal** 14:20 20:18
**Appeals** 20:12 24:8
**APPEARANCES**
  2:1
**appeared** 11:13
**appearing** 36:21
**appears** 12:25
**applicability** 19:9
**applicable** 18:4
  19:5

**application** 51:24
**apply** 24:15 25:2
**appointed** 9:14
**approval** 5:7,25
  45:11
**approve** 5:2 11:10
**approved** 8:18
  11:14
**approving** 11:8
**approximately**
  1:18 14:9 52:24
**April** 9:22 10:8
  14:9
**architect** 42:4,17
  45:1
**arguing** 20:18,18
**argument** 43:10
  46:23 48:11
**arguments** 44:23
**arising** 21:13 31:4
  32:13
**ascertain** 27:6
  29:20 30:15
**aside** 11:24 19:13
**asked** 37:17 38:7
  47:22 49:8
**asking** 36:5 41:18
**assert** 8:13
**asserted** 10:11 26:8
**assertions** 18:24
**asserts** 16:6
**assets** 5:6 10:6
  28:18
**assign** 4:13
**assigns** 13:8
**association** 5:24
**assume** 4:13
**assuming** 41:9
  47:12
**astonishing** 9:3
**attach** 32:12
**attached** 5:15
  44:10
**attaches** 45:13,15
**attaching** 8:20
  11:15
**attachment** 10:6,24
  14:8 26:2,5,7
  28:18,19 30:13
  32:9,11

**attempted** 49:23
**attention** 51:22
  52:4,19
**attorney** 2:3,13,23
  20:8 43:12
**auction** 9:17 11:8
**August** 3:23,23
  14:2
**authenticated**
  46:15
**authority** 25:16
  40:1
**authorize** 6:13
**authorizing** 6:11
  6:22
**automatic** 33:21,22
  37:16
**avail** 14:21
**avoid** 17:21 31:20
  34:3
**avoidability** 24:13
**avoidable** 15:19
  16:9 32:22
**avoidance** 17:11,13
  19:11,13 20:6
  22:24 24:15,15
  27:12,17,25 31:13
  34:7,14
**avoided** 24:10
**award** 10:4

**B**

**b** 14:22 24:9,14
  41:5 47:7 53:2,7
**back** 32:16 33:25
  40:16 47:5
**bank** 2:6,8,10,16
  3:10 5:18 6:14,24
  7:19 8:11,12
  10:25 13:12 14:7
  24:20 28:19 35:3
  37:14 38:4 39:2
**Banking** 13:18
**bankruptcy** 1:1,12
  1:17 9:2,9 14:5
  15:2,11 16:11,13
  16:16 17:1,2,12
  17:14 18:9,22
  19:3,6,7,9,12,20
  19:24 20:2,4,25

21:2,5,9 22:2,8,21
  23:9 24:9,24 25:4
  28:2,3 31:12,19
  31:22 32:3 33:5,7
  33:12,17,19,23
  34:16 50:18 53:1
  53:6
**Bank's** 34:22 36:13
  38:5
**based** 20:23 26:17
  26:19 32:10 46:13
  51:11
**basically** 21:12
  45:14 50:6
**basis** 12:8 45:22
**BB&T** 7:7
**becoming** 12:10
**beginning** 1:18
  37:15
**behalf** 3:6,7 7:19
  7:20,22,24 39:21
**Belgard** 2:15 35:17
  35:18,21,25 36:9
  36:11
**believe** 7:7,10
  24:21 42:22 45:2
  51:7
**believes** 14:19
**beneficial** 20:6
**beneficiaries** 15:9
**beneficiary** 13:8,23
**benefit** 17:10 19:14
  19:14
**best** 47:20
**better** 6:8
**bid** 11:10 22:17
**bind** 26:3
**bit** 24:6
**blind** 49:19
**block** 47:18
**bona** 15:5,14,23
  18:3,6,11,18 19:1
  23:4,17,20,23
  24:1,25 25:5,6
  26:3 27:13,16,22
  28:1 29:15
**bond** 39:4
**book** 30:5
**books** 29:19
**borrower** 13:5

47:16,17 49:21
**borrowers** 49:11
**borrowing** 48:2
**bothered** 47:10
**bothering** 47:22
**bought** 18:11,18
  28:12
**bound** 25:23 29:10
**Branch** 13:18
**break** 22:15
**Brian** 2:7 3:9 37:10
  37:13
**Brick** 25:9
**bricklayer** 42:12
**brief** 44:10
**briefs** 42:3
**bring** 42:14 51:22
  52:3
**bringing** 9:19
  52:18
**brings** 31:15
**broad** 42:14
**brought** 22:19,24
**Bufford** 50:20
**build** 44:12
**building** 40:6,10,23
  40:25 41:6,10,12
  41:15 42:10 43:18
  45:6,17
**build-out** 5:10
**business** 12:1,6,11
  21:16,18 22:5
**buyer** 25:11
**buying** 22:6
**B.O.P.S** 7:10 39:9
  39:12

**C**

**C** 3:1 53:2,2,2
**calendar** 4:2
**California** 50:20
**call** 3:3 43:1
**calls** 45:8
**capacity** 20:10
  24:25
**care** 25:13
**carefully** 21:5
**Carolina** 28:5
**carpenter** 42:12
**Cascade** 17:12

**case** 1:6 3:4 16:16
  16:20 17:19,24
  18:7 20:1 21:11
  21:24,25 24:18
  27:10,20 28:9,25
  29:2,23 30:18
  31:1 32:25 33:2,3
  33:8,18 34:6 42:2
  44:2,5 48:17 49:2
  50:17
**cases** 9:12,15 23:19
  28:4 29:11 50:18
  50:21
**cause** 10:1 16:6
  26:7 28:13
**cavalierly** 21:1
**Center** 9:12
**central** 21:6 50:20
**Century** 38:6,6,13
**certain** 5:3 6:14
**certainly** 14:23
  35:23
**certificate** 13:24
  14:1,3
**certified** 13:1
**certifies** 53:3
**chain** 22:15 25:8,12
**changed** 43:2
**Chapter** 1:7 2:2 8:6
  9:9,14 22:21 32:1
  52:2
**character** 48:1
**charged** 15:16 31:7
**charges** 12:5
**Chase** 2:8 7:19
  8:10 11:6
**Chavis** 25:20
**checks** 13:20
**Chevy** 2:8 7:19
  8:10 11:5
**chose** 47:21 48:3,5
  48:7
**circuit** 19:25 22:3
  24:19 26:13 27:1
  27:14,20,23 32:4
**circumstances** 48:3
**cite** 19:22 20:1 42:3
**cited** 23:18
**Citigroup** 6:11,14
**city** 26:13

**Civil** 9:1
**claim** 16:7 23:6
  26:8 28:22 34:8
  36:2 42:19
**claimed** 8:19,23
  11:15 15:18 18:24
  20:6
**claiming** 17:3 20:9
  27:17 40:13
**claims** 10:11 15:13
  15:25 20:24 24:3
  24:22 34:17
**clear** 5:5 8:8,19
  12:24 18:20 22:23
  24:1,2
**clearly** 42:2,14
**CLERK** 3:4
**clerk's** 26:12
**client** 42:25 43:12
  46:19 47:19 48:24
**closing** 5:11,24
  12:16,25
**Code** 9:9 16:17
  17:1,14 19:7
  20:25 21:5 23:15
  24:9 26:1 31:13
  31:19 34:16 40:17
**Coleman** 24:19
**collateral** 39:6
**collecting** 5:19
**collectively** 8:10
**come** 47:23,24
**comes** 27:9 43:20
**coming** 19:5,9
**commenced** 43:9
**commencement**
  16:15,19 17:19,24
  18:7
**comment** 49:18
**Commerce** 2:6
  3:10 5:18 37:14
  38:4,4 39:2
**Commerce's** 37:8
**commercial** 5:2
**committed** 12:15
**committee** 2:4 3:8
  6:22 39:7 52:5
**common** 25:22
  29:9
**Community** 24:20

**companies** 8:5 9:7
  9:10 13:22
**company** 8:12
  13:18 17:12 19:23
  22:17 25:9 39:4
  41:3
**company's** 12:2
**compel** 10:23 28:11
  33:14,15 34:9
  46:1
**compels** 24:21
**compensatory**
  10:22
**complaint** 10:11,15
  10:17,22 34:9
**complete** 24:16
  53:4
**completed** 45:17
**completely** 49:12
**complicated** 30:18
  41:17
**composed** 16:14
**concede** 50:13
**conceded** 48:21
**conclude** 31:1,11
  34:11
**concluded** 52:25
**concludes** 52:20
**conclusion** 24:19
**conclusions** 8:25
**condo** 5:23
**condominium** 5:2
**conducted** 6:16
**conducting** 5:16
**confer** 35:21,24
**conflict** 36:6
**Congress** 21:5,8
**connected** 45:6
**connection** 12:4
**consent** 4:8 7:7,12
  11:25 36:16,18
  38:8 39:7
**consider** 14:23
  24:8
**considerable** 22:8
**consideration**
  23:13 26:4 50:13
**consistent** 21:9
  34:19 36:22
**consistently** 27:24

**constitute** 53:8
**constituted** 32:22
**constitutes** 8:24
**construct** 45:16
**constructed** 40:7
**constructing** 45:6
**construction** 39:23
  40:6,10,14,22
  41:1,25 42:15
  44:6,20,25 45:9
  48:1
**constructive** 8:14
  15:9,18 16:5
  18:24,25 19:20
  20:3,13,18,22
  21:11,17,21 23:25
  25:7,17 26:22
  27:11,16,21,24
  28:8,23 30:1,2,10
  31:4,6,7
**construing** 29:2,4
**Consultants** 51:25
  52:2
**consumer** 50:21
**contacted** 38:7
**contained** 13:3,14
**contend** 15:1,6
**contest** 20:5
**contested** 3:14
**context** 44:2
**continuance** 4:19
  38:8
**continue** 4:19 35:8
  36:4 37:18,23
  38:9 50:25
**continued** 14:6
  37:25 38:11 52:1
**continuing** 34:21
**contract** 4:13 5:20
  18:1 37:19,19,21
  44:9 45:5
**contractor** 43:19
  44:15,17
**contracts** 5:10
**control** 48:4
**controlled** 9:8
**convenient** 41:11
  41:14
**conveyance** 11:25
**conveyances** 19:15

19:16 23:12
**conveyed** 11:19
22:9,11
**copies** 13:3 48:17
49:4
**copy** 13:2
**corporation** 2:12
7:23 8:11 21:2
22:9,10,14 27:8
**correct** 33:14 36:9
52:16
**correctly** 31:2
**corresponding**
13:25
**counsel** 4:7 8:1
11:12 34:18 35:7
35:15,22,24,25
36:5,15,21,23
38:7 39:19 42:3
46:6
**county** 26:13 29:20
43:1
**course** 44:22 48:19
48:20 50:14
**court** 1:1,12,17 3:2
3:11,17,18,21 4:1
4:8,21,24 5:7,17
6:1,4,8,13,18 7:2
7:5,8,9,17,25 8:3
8:4 9:8,23 10:7
11:13 12:20 13:11
20:3,12,21 22:1
22:19,22,23,25
23:3 24:7,8 26:7
26:13 29:1,9,17
30:1 32:5,11 33:5
33:14,23 35:8,10
35:12,15,16,20,23
36:8,10,12,19
37:2,12,18,25
38:2,11,16,23
39:9,11,15,19,22
40:8 41:13,22
42:1,4,6 43:11
44:3,22 46:3,7,9
48:11,12 49:24
50:1,5,16,18
51:17,19,20 52:8
52:14,15,18,22
53:1,6,25

**courtroom** 50:22
**courts** 27:23
**Court's** 3:14 7:16
46:22 51:22
**covenants** 10:19
**crafted** 21:5
**create** 32:7
**created** 20:19
**creates** 16:13 27:3
**credit** 12:12,17
17:23,25 18:13
39:3
**creditor** 15:16,24
17:17,20,23 18:1
18:3,16 19:1
20:22 31:24,25
33:1,13,20,25
51:6
**creditors** 2:4 8:10
14:7,14 15:1,13
15:25 16:2 17:11
18:21 19:14,19,22
20:23 21:23 23:14
24:3,22 34:17
36:24,25
**criminal** 23:1
**curiously** 13:5
**current** 5:19 9:20
**currently** 3:19
**C-1** 43:2

**D**
**d** 3:1 17:1 19:4
51:4
**damages** 10:5,23
**Dameron** 20:2,5,9
20:14,20
**date** 3:18,19 4:15
4:22 14:4 15:2
18:12,14,14 21:14
23:9 25:24 32:17
32:21 33:4 34:1
35:8 36:6,7 37:18
38:8
**dated** 11:21
**dates** 3:17,22 4:2
12:19
**day** 11:22 14:11
18:20 32:18
**days** 12:16 16:10

31:21 33:19 36:5
**deal** 30:19 49:23
**debt** 31:23 32:24
**debtor** 1:7 8:16
15:15 16:15,19,25
17:3,4,8,9,22,22
17:23 18:4,11,14
18:17,19 19:3,14
19:17 20:7,10
22:5,9,13,20 23:1
24:23 31:23 32:1
33:8,12,17 53:7
**debtor's** 5:12 9:17
15:6 16:23 17:5
36:23
**December** 11:25
**decided** 21:25 33:5
**decision** 21:4 27:19
30:6,6
**declaration** 51:23
52:6
**deed** 11:21 12:22
13:2,3,9,13,15,16
13:24 18:13,19
22:13 23:8 28:11
29:19 30:5 31:14
32:20,21 33:15
34:10 46:14
**deeds** 8:16 9:4 15:8
18:21 23:7,12
**deem** 10:7
**Deepti** 11:20
**defaulted** 22:17
**defeat** 31:4
**defeated** 15:3
**defeats** 28:23
**defects** 25:8
**defendants** 10:10
**defendant's** 10:6
28:18
**defended** 20:17
**defense** 24:10
50:10,13 51:5,7
**defenses** 48:22
49:15 50:6
**deficient** 31:3
**defined** 31:20
**degree** 25:13
**demeanor** 50:3
**Derek** 2:11 7:20

**described** 9:25
26:18
**description** 16:6
26:9,11 31:3
**desiring** 29:18
**Despite** 10:18
**details** 36:18
**determination** 51:8
**determine** 8:22
30:3,24
**determined** 21:8
**determines** 27:21
**development** 43:7
43:8
**different** 21:24
**diligence** 29:13
37:20
**direct** 34:18 40:1
**discharge** 4:6
**dischargeability**
4:7
**disclosed** 25:19
**disclosure** 52:11
**discovered** 22:16
**discovery** 8:21 36:4
39:18
**disposed** 4:10
**dispute** 40:13
**disputed** 11:17
**distinction** 42:9
**distinguishable**
16:1
**distressed** 22:6
**distribution** 21:6,7
32:1
**District** 1:2,17 9:23
9:24 24:7 28:4,5
33:6 50:20
**Diversified** 53:3,15
**Division** 1:3,18
**docket** 3:13,14,15
4:5 5:1 34:21
37:8 51:18 52:9
52:20
**docketed** 18:17
**doctrine** 25:22
**document** 47:10
**documents** 35:2,3,5
35:6 48:6 49:3,4,5
49:8 50:11

**doing** 44:20 50:4
**doubt** 27:11
**draft** 36:17
**drainage** 42:23
43:21
**draw** 42:9 48:1
49:7,9
**drawing** 49:13
**drawn** 13:21
**Drive** 5:3 7:15 8:7
8:8,10,15 9:18
11:5,18 12:23
14:7 15:1 18:18
19:19,22 24:22
34:13 37:17,22
38:6 39:4 40:5
**due** 12:10 14:16
37:20 48:19,20
50:14
**dues** 5:24
**D.C** 53:18

**E**
**E** 3:1,1 47:8 53:2,2
53:2
**earlier** 7:11 13:15
**Eastern** 1:2,17 9:24
**ECF** 52:12
**educate** 46:11
**effect** 24:9 25:16
48:21 51:13
**effects** 29:15
**effort** 43:24
**efforts** 44:2,11
**eight** 34:22
**either** 7:10 22:14
**Electronic** 13:6
**elevating** 20:22
**eleven** 37:15
**Elite** 9:10
**embraces** 42:8
**EMC** 2:12 7:22
8:11 11:13
**employ** 51:24
**employees** 21:19
**employment** 52:1,7
**enables** 31:24
**enabling** 32:25
**enacting** 29:17

encumbering 33:9
encumbrance
25:15
encumbrances
14:4
endorsed 39:7
enforce 24:23
26:11,20
enforceability 8:23
enforced 19:17
24:24
enforces 27:3
Engineering 4:14
enhanced 43:13
enjoyment 41:12
41:15
ensure 25:14
enter 51:6
entered 11:7,25
26:24 39:12
Entertainment
9:10
entirely 12:24
entirety 11:21
entitled 8:13 19:20
33:25 44:4,18
entry 6:17
equitable 8:14,19
8:23 11:15 15:13
15:25 16:5,14,20
16:25 23:5,6 24:3
24:22 34:17
equities 17:6
equity 23:18,21
erection 42:10,11
ERISA 21:13,19
escrow 20:8
escrowed 22:24
ESQUIRE 2:5,7,9
2:11,15,15,17,19
essence 42:20
essential 14:10
essentially 21:24
29:3 32:9
establish 9:17
22:20 26:17
established 23:16
30:9
estate 8:6 15:15
16:13,21 17:7,16

18:10 19:3,6,9
20:4,8,16 26:4,10
estate's 34:25
et 2:21
event 7:11 13:19
45:11
evidence 12:24
14:11,12
evidentiary 8:21
exact 30:8 42:5
exactly 28:7
examination 6:11
6:23 29:19
examine 27:5 30:15
30:23
examining 25:13
example 28:2 43:11
exception 23:6 37:9
exclusion 19:2,4,8
executed 13:24
22:14,14 33:8,9
executory 4:13
exemplary 10:4
exercise 19:10
25:13
exercising 27:12
Exhibit 47:7
existence 21:14
29:14
existing 49:13
exists 3:13 18:3,8
explained 12:3
14:11 27:1 29:1
expressed 19:5
20:14,19
expressly 25:18
28:22
extend 4:6 43:10
extended 18:13
extends 17:23
extent 14:18 16:23
16:24

F

F 53:2
facility 12:11
fact 8:24 13:13
14:22 22:16 29:24
32:8 33:11 40:25
44:6,9 49:10,13

50:9,23 51:3
factors 49:20
facts 12:4 14:10
25:18 41:18 50:8
51:7
factum 48:23 51:9
51:15
failure 28:21 30:7
fair 48:5
Fairfax 5:3 8:7
9:18 10:14 11:2
faith 14:13 24:12
false 10:5
Fargo 2:10 7:21
8:12 9:22 10:12
10:20 11:5 14:9
16:6,8 25:2 28:12
31:10,18 32:19,25
34:8
Fargo's 10:20
15:18 16:1 31:13
Farnum 2:5 3:7,7
favor 16:8 17:6
23:5 32:15
FDIC 4:6,7
February 12:19
13:14
federal 8:25 9:1
12:5 13:12 19:25
20:15,20 22:3
24:20 27:8,18
feel 52:6
fees 44:4,19 45:10
fide 15:5,14,23
18:3,6,11,18 19:1
23:4,17,20,23
24:2,25 25:5,6
26:3 27:13,16,22
28:1 29:15
file 38:13,14
filed 4:14 5:22 6:13
6:16,25 9:8,16,22
10:8 11:5,23 12:4
14:5,23 15:2
23:10 26:16 31:10
32:17,19 33:12,13
33:16,17,19 34:24
35:14 36:1 39:5
files 32:15
filing 16:10,13

18:12,14 21:14
22:8 26:17,21
27:2 31:22 32:2,6
32:10 33:19
filings 51:22
final 51:18
financed 22:11
financial 9:10 10:9
12:13 35:19
find 30:5 40:1
findings 8:24 14:19
14:22
fine 48:12,18
first 4:5 12:10
15:22 16:13 23:19
28:4 33:13 39:17
40:21 41:23 45:2
48:14 50:16
first-lien 15:8
five 6:21 8:4 9:15
12:20 13:10,20
18:21 20:15 24:3
37:8
fixing 22:6 31:20
fixtures 18:4
Floor 53:17
Florida 33:6
FMI 5:6 10:9,12,23
11:1 12:2,6,9,11
12:14,15,19,21
13:5 28:11 50:7
FMI's 10:18,25
fold 42:16,17
following 10:18
11:7,22 15:21
follows 10:1 12:3
footnote 20:15
foreclosure 22:18
foregoing 53:4
forensic 6:15
form 10:25 51:12
forth 14:16 26:6
28:13 34:6
forward 33:23
46:22
four 6:10 9:7,10
fourth 16:7
frankly 49:2
fraud 9:3 10:5,11
14:16 15:7 23:2

47:20 48:17,22
50:15 51:8,15
fraudulent 10:2
11:24
fraudulently 8:17
10:1
free 5:5 8:8,18
14:21 18:20 22:23
23:17 24:2 25:15
34:17
freehold 40:24
Friday 1:11
Fridays 38:15
front 47:9
frozen 14:8
FSB 8:11
fundamentally
20:24
funds 10:1 12:14
20:7,10,13 21:14
23:8 39:1,1,2,5,8
further 11:9 15:6
26:15 52:4,19
Furthermore 23:16
F.S.B 13:12

G

G 3:1
gas 48:3
general 9:25 12:9
20:25 26:7 28:13
30:20 31:3 42:7
43:19 44:15,16
51:11
generalized 43:7
getting 43:17,18
GHA 2:18 38:19,20
39:14,19,21 40:5
40:14 41:5,19
Gibbs 25:20
gift 11:21
give 3:21 26:22
51:1
given 10:14 50:2
gives 25:17 47:8
Glaser 36:21,22
Global 6:11,14
GMAC 2:14 7:24
8:11 11:5 35:14
35:18 46:8 47:6

47:19 48:20 50:7
51:1
**GMAC's** 37:9 46:4
**go** 4:3 6:1 35:20
36:3 40:16 43:1
46:22 49:21
**goals** 20:25
**going** 6:4 33:23
36:3 43:17,17
44:24 45:22 50:10
50:25 51:14 52:9
**Gold** 3:6 8:5 9:14
34:18 38:4 51:19
51:21 52:10,16
**good** 3:2,5,9 7:18
14:13 23:23 24:12
25:14 35:17 36:20
46:5 51:21
**grading** 40:9,12,13
42:22 43:20
**Grand** 23:19
**grant** 6:1,18 7:2
39:11 44:24 45:22
50:21 51:4
**granted** 7:1 33:24
**grantor** 13:5 25:14
**grants** 37:3
**great** 25:16
**greater** 17:4
**Green** 27:8 32:4
**grounded** 23:21
**grounds** 33:21
**groups** 20:22
**guess** 8:3 46:3 48:9
**guilty** 12:4

**H**

**H** 8:5 9:14
**happened** 43:5
**Harris** 27:10 30:11
32:6,8
**harsh** 29:14
**Hazel** 40:12 41:3
**hear** 48:11
**heard** 1:15 14:10
**hearing** 4:15 8:22
11:7,9,11,12 35:9
37:24 40:2 51:13
52:8
**hearings** 37:24

**held** 8:22 11:8,9
13:10 14:7 19:3
20:7,13,14 23:1,3
23:20,23,24 24:14
27:14,20,24 30:1
48:8
**Herndon** 34:23
**Hildebeidel** 2:17
36:20,21 37:6
**Hill** 27:8
**Hills** 32:5
**history** 24:6 50:17
**hold** 17:1 46:19
**holder** 9:5 48:18,19
48:20 50:13
**holding** 24:21
**holds** 16:19 34:16
**home** 12:7
**Homecomings**
35:18
**Honor** 3:5,9,12,25
4:4,5,12,23,25 6:3
6:6,20 7:4,13,18
34:20,21 35:11,17
35:21,25 36:11,20
37:5,7,13 38:1,9
38:17,18 39:13,25
40:11 41:21,23
42:5,13,19,21,25
43:4,6,15 44:1,5,8
44:13 45:25 46:5
48:13,14,20 51:16
51:18,21 52:12,17
52:20
**Honorable** 1:16
53:6
**Honor's** 37:22
38:12 52:3
**hood** 36:2
**houses** 22:6
**Hulley** 2:13 7:22,22
**hypothetical** 15:14
15:15,23,24 17:16
17:16 23:4 24:25

**I**

**identified** 28:12
50:8,9
**identifies** 31:2
**identifying** 47:11

**illiterate** 49:20
**impact** 52:6
**importantly** 20:11
**impose** 20:3
**imposed** 14:15 21:1
21:16,21
**imposition** 19:20
**impossibility** 29:12
**impression** 46:13
**improved** 42:24
**improvement**
40:23 45:15,19
**include** 31:20
47:15
**included** 16:7
**includes** 17:8
**incorporated** 6:23
9:1
**increased** 43:3
**incurred** 17:22
**independent** 45:4
**index** 30:5
**indexed** 29:25
**indicating** 34:25
**indication** 14:15
**individual** 22:11
**IndyMac** 13:12
**IndyMac's** 13:12
13:19 14:1
**informal** 36:3
**informally** 35:2
**information** 13:4
38:13
**initial** 24:11 47:6
**initials** 47:7
**injunctive** 10:25
28:10 32:19
**inquiry** 25:20
**insolvent** 31:24
32:2
**institutions** 12:13
**instrument** 25:17
25:18
**Insurance** 19:23
39:4
**intended** 8:16
26:10 29:5,9 30:9
**interest** 8:19 10:4
10:21 11:3,15
15:10 16:5,15,20

16:25 17:9 18:25
22:10 23:5 26:17
28:22 30:9 34:12
34:14,25
**interested** 27:5
30:14 52:12
**interesting** 33:3
**interests** 5:5 19:15
19:16
**intervened** 19:21
**intimately** 45:6
**inventory** 5:16
**investigating** 34:25
**investigation** 6:15
6:24
**Investments** 9:12
13:21
**investors** 12:7
**involve** 20:5
**involves** 45:3
**involving** 9:4
**issuance** 10:2
**issue** 19:18 24:15
28:25 29:23 39:25
40:3 41:17 48:14
50:14,19 51:9,15
**issues** 30:18 40:18
40:19 51:13
**item** 4:12 7:14
36:13 37:15 38:3
38:3,20,24 39:1
46:2
**itemized** 5:17
**items** 38:18 48:9
52:3

**J**

**January** 8:22 12:22
**Jason** 8:5 9:14
**job** 41:6
**John** 2:5,15 3:7
7:24 46:7
**joint** 6:21 51:25
**jointly** 9:13
**judge** 1:16 19:22
20:12,17 50:3,20
53:6
**judgement** 50:1
**judges** 22:22
**judgment** 15:16,24

17:17 18:15,17
19:1 23:1 25:24
26:24 28:15 29:10
32:14 38:5,21
39:17 40:8 41:19
44:25 45:23 46:4
48:10 50:5 51:5,6
**judicial** 17:25 18:2
37:17,22 38:6
39:3 40:5
**July** 3:22,22 4:22
13:23 36:8 37:24
**June** 3:18,20 9:7
18:17,19 35:8,10
36:6 38:8,9,14,15
50:25

**K**

**K** 1:6 3:4 53:7
**Kane** 42:2 44:5
**Kenney** 2:7 3:9,10
37:10,12,13,13
38:1,3,12,17,24
39:13,16,25 40:11
43:5 45:12,25
**Kenney's** 43:10
45:22
**kept** 29:5
**Kevin** 2:17 36:21
**kicked** 37:19
**Kim** 27:8 32:5
**kind** 36:2
**knew** 49:13
**know** 29:13 43:6
46:20 47:4 50:12
50:19
**knowledge** 15:18
17:20 24:13 27:15
30:22
**known** 13:7 20:2
**knows** 52:11

**L**

**labor** 42:8,9
**lack** 14:14
**land** 29:19,20,22
30:3 41:11,13
45:20
**Lands** 21:1,10
**language** 30:20

40:16 42:6,7,13
**largest** 36:25
**latent** 23:17,21
**laundering** 12:5
**law** 2:3,13,23 8:25
18:5,16,25 19:17
24:1 25:22 26:21
27:2,21,25 29:5,9
29:17 40:1
**leasehold** 45:19
**left** 14:4 21:15
50:24
**legal** 14:24 16:14
16:20,24 47:9
**legislature** 29:16
**lender** 12:14,25
13:5,7 21:25
22:19,25 23:5
47:16
**lenders** 20:16
**lender's** 13:8 23:7
**lending** 12:14
**letter** 39:3
**level** 49:22 50:3
**liable** 48:8
**lie** 28:16
**lien** 15:16,18,19,24
17:17,25 18:2,15
18:17 19:1 23:14
24:15 27:3 31:21
32:7,24 38:6,20
39:24 40:5,15,19
40:20,22 41:1,4,6
41:8,9,10,25
42:16,18 43:14,23
44:7,16,17 45:1
45:13,14,20
**lienable** 39:23
44:14 45:9,11
**liens** 5:5 8:8,14,19
8:23 9:20 15:1
22:23 38:19 41:19
41:20
**lift-stay** 35:14
36:14
**light** 15:6
**Lime** 25:9
**limited** 17:7 48:21
49:15
**line** 12:12,17 47:17

47:17
**Lipson** 27:10 30:11
32:6,8
**lis** 9:21 15:4,17
16:3,4,9 25:3,22
26:2,5,15,16,19
26:22 27:2,3 28:8
28:14,15 30:8,12
30:21 31:2,9,11
31:16 32:6,10
33:4,16,18 34:1,5
**list** 5:17
**lists** 49:20
**litany** 49:20
**litigation** 26:25
**little** 24:6 27:11
36:1 40:4
**LLC** 8:11 35:18,19
**loan** 11:17 12:9,15
12:16,25 13:17,25
22:12 47:8,11
48:7
**loans** 8:15 10:3,12
10:19,21,24 11:1
12:2,21 14:14,17
15:7
**local** 36:21
**located** 5:2,13 7:14
8:6 9:18 10:15
26:14 34:23
**long** 31:1 46:11
**look** 36:1 46:18
47:5,12
**looking** 50:14
**lot** 14:10,12
**lots** 50:18
**lower** 27:23

_____

**M**

**Mahaffey** 27:18
**Maharaj** 2:21
46:15 47:9 48:24
50:2
**Maharaj's** 46:6,18
47:2,7,19,20 48:4
49:23
**maintained** 12:11
**maintaining** 41:4
**major** 9:11 14:15
**making** 25:11

**man** 43:1
**management** 40:6
41:2,25 44:6,21
**manager** 42:15
44:25 45:9 51:25
52:2
**manager's** 39:23
**managing** 44:3,4
44:19
**manifestly** 29:18
**manual** 42:12
**Marcher** 51:24
52:1
**market** 12:8
**Markets** 6:11
**Martha** 2:13 7:22
**material** 51:7
**matter** 1:15 3:16
4:5,19 7:15 9:11
19:2 34:22 35:8
35:13 46:3 51:19
52:8 53:7
**matters** 3:3,14 4:2
25:19 37:7 38:20
46:25
**Mayer** 22:1,21
**McGARY** 2:19
39:20,21,21 41:22
41:23 42:5 43:15
**mean** 45:4,17
**means** 29:18
**mechanic** 39:24
40:22 44:2
**mechanics** 42:16
43:14,22 44:7
45:14
**meet** 48:3
**memorandum** 9:21
9:25 15:17 16:3,4
16:9 25:3 26:6,15
26:18,21 27:2
28:14,14,17,22,24
29:24 30:8,21
31:2,5,9,10,16
32:6,12,16,17
33:4 34:1,5 38:14
**mention** 28:17
**mentioned** 31:9
48:15
**Mercedes** 36:14

**mere** 31:3 45:16,19
**merely** 27:4 30:13
**MERS** 13:7,23
**Middle** 28:4
**Midland** 8:12 11:6
**Midland's** 7:25
**Mill** 5:3
**mind** 29:5
**minutes** 38:22
**mischief** 29:5,8
**misrepresented**
15:7
**misstatement** 30:7
**mistake** 23:22
**Mitchell** 1:16 53:6
**modified** 25:25
**moment** 21:20
35:21
**monetary** 16:7
**money** 12:5 21:18
28:15 43:24
**moot** 46:1
**moral** 20:23
**Morgan** 28:3
**morning** 3:5 4:9
37:21 39:9
**mortgage** 2:12 7:23
8:5,11,11,12 9:11
10:3,9 12:2,8,15
13:6 21:25 22:12
22:17 33:8,9,15
35:18
**mortgages** 11:1
12:7 33:11
**motion** 4:6,12,15
5:1,15,22,23 6:2
6:10,13,18,21,25
7:2,6,8,14 8:5
9:16,19 11:23
14:22,23 34:22,24
35:14 36:14 37:9
37:10,16 38:5,14
38:21,25,25 39:1
39:5,7,8,17,18
40:3,9 44:24
45:23 46:1,4,9
47:1 48:10 50:1,5
50:8 51:4
**motions** 6:12 37:9
39:11,14

**movant** 35:18
**move** 36:7
**moving** 44:11
**multiple** 10:2
**mutual** 23:22

_____

**N**

**N** 3:1 53:2
**name** 11:18 26:9
47:16
**named** 10:9
**narrows** 51:13
**National** 19:23
**nature** 30:8
**necessarily** 32:16
49:11
**necessary** 6:15,24
14:19 41:11,14
47:25
**need** 24:17 49:8
52:10,14
**neither** 25:7 27:2
30:6
**nervous** 48:17
**never** 33:12 45:16
**nevertheless** 16:8
31:17
**new** 49:12
**nine** 35:13
**nominee** 13:7
**North** 28:4
**Northern** 28:5
**notary** 47:18
**notation** 13:14
**note** 9:6 13:1,11,12
13:19 14:18 21:4
28:11 30:11 33:8
44:8 46:14,24
47:4,12,14,15
48:2,15 49:12,13
50:22 51:1,3
**noted** 13:22 23:11
24:6
**noteholder** 47:15
**notes** 9:4,6 11:3
13:10 14:7 34:10
50:19,23
**notice** 15:4 16:5
23:14 25:8,18
26:5,22 27:4,11

27:17,24 28:8,23
30:1,2,10,13 31:4
31:6,8 32:10,13
33:16,18
**noticed** 36:24,25
**notices** 27:22
**November** 11:9,10
11:12
**NRM** 9:11 13:21
**number** 3:4 5:1
6:10,21 7:6 13:25
34:22 35:13 36:13
37:10,15 38:3,20
38:24 39:1 46:2
48:22 49:15
**nutshell** 15:12
**NW** 53:16
**N.A** 8:12

## O

**O** 3:1
**object** 4:6 9:25
26:7 28:13 31:3
36:23
**objected** 11:13
**objecting** 8:9 13:10
14:14 15:13,25
16:2 18:21 20:1
21:23 24:3 34:12
**objection** 34:24
36:1 37:1
**objections** 5:22
6:16,25 8:4 11:4
11:11
**objectors** 8:13
12:20
**objects** 29:16
**obligated** 30:23
**obligation** 17:22
**observe** 50:2
**observed** 20:21
**obtain** 12:9 25:6
45:5
**obtained** 9:20 10:1
14:8 18:2,14
22:22 32:15,19
**obtaining** 15:5 45:3
45:10
**obtains** 17:24 18:5
**occupying** 5:21

**occurred** 32:23
**occurring** 31:21
47:21
**October** 11:8
**odds** 20:24
**offer** 5:8
**office** 26:13 47:23
47:25
**Official** 2:4
**Oil** 17:12
**Okay** 3:11,21 4:11
4:21,24 6:1,18 7:2
7:25 8:3 35:10,16
35:20 36:10,19
37:2 38:11,23
39:11,16,22 41:22
44:22 46:3,9,12
50:16 51:17,20
52:8,19,22
**old** 19:23 29:5
**omnibus** 3:17,19
3:22 4:2 35:8
36:7 37:23,24
38:8
**once** 12:16 31:6
**ones** 47:21
**operate** 32:7
**operated** 12:2
**operates** 26:22
**operation** 12:3
**operations** 51:25
52:2
**opinion** 19:23
20:20 22:3 23:11
24:7,18 27:14
33:10 42:8
**opportunity** 8:21
49:17 50:2 51:1
**opposed** 33:21
**opposite** 34:4
**opposition** 38:13
**optimistic** 4:16
**oral** 7:16
**order** 3:13 4:8 6:2
6:10,17,19,22 7:3
7:7,10,12 8:18
11:1,2,7,25 12:11
14:19 16:12 34:19
36:16,17,18 37:2
41:19 45:24 46:1

49:9 51:12 52:9
**ordering** 41:20
**orders** 6:4 39:7,12
**ordinance** 26:11,20
**original** 13:1 48:16
48:18 50:19,21,23
51:1,3 53:8
**Originally** 36:5
**originated** 12:6
**ought** 36:6 39:16
**outcome** 14:12
18:23
**outside** 24:23 25:3
34:2
**owned** 5:6 12:1
**owners** 20:7
**o'clock** 1:20 52:24

## P

**P** 3:1
**package** 13:1
**page** 30:12 47:7,8
47:13,14
**pages** 20:15 53:4,8
**paid** 5:11,24 9:6
13:19 23:8 39:4,6
**paper** 46:18,19
47:3,9,22 48:2
**papers** 30:24 46:10
46:10 47:6,23,25
49:11
**paragraph** 10:18
47:8
**parcel** 8:6 43:6,8
44:10
**part** 3:13 6:15
12:25 29:13 43:8
43:16 44:10 45:4
50:5
**particular** 17:15
33:1,18 40:4
52:14
**particularly** 42:13
**parties** 4:15,18 8:9
13:11 14:20,24
17:6 20:1 23:14
34:12 37:4 44:23
52:12
**party** 14:18 26:18
32:8,15

**party's** 14:20
**Paul** 2:9,15 7:18
35:17
**payable** 47:12
**payment** 12:10
39:3
**payments** 14:6
21:8
**Pear** 23:24
**pendency** 27:4
30:13
**pendens** 9:21 15:4
15:17 16:3,4,9
25:3,22 26:2,5,16
26:17,19,22 27:2
27:3 28:9,14,15
30:8,12,22 31:2,9
31:11,16 32:7,10
33:5,16,18 34:1,5
**pending** 9:23 25:24
26:8 29:11,21
49:7
**percolating** 50:18
**perfect** 11:3
**perfected** 18:5,6,12
32:24
**perfection** 31:21
**perform** 42:8
**performance** 10:23
**performed** 44:9,9
**performs** 42:12
**period** 31:17 32:2
32:23 34:2,6
37:20 49:7
**permanently** 40:23
**permission** 37:23
**permit** 31:13
**permits** 18:5 43:18
**person** 26:10 29:18
45:8
**personal** 5:4,13,14
26:4
**persons** 42:8
**person's** 44:11
**petition** 14:5 16:11
16:13 23:9 31:22
32:3
**petitions** 9:8
**phrase** 41:13
**physical** 29:12

**piece** 41:24 47:9,21
**pieces** 47:2
**plaintiff** 26:9
**plaintiffs** 10:2
**plan** 12:6 21:21
43:7,7
**plans** 42:10 43:17
**played** 9:11
**plea** 12:4
**please** 3:2 35:9
37:24 38:10 45:23
46:7
**pleased** 37:20
**pleasure** 46:23
**plus** 10:4
**point** 10:23 37:11
41:3 43:1 44:5
48:21 49:7 50:11
52:15
**policy** 21:9
**portion** 34:9 45:2
**position** 14:20
15:12 16:1 18:10
21:23 40:24 47:20
**positions** 14:24
**possibility** 47:2
**possible** 29:13
**potential** 30:23
31:7
**power** 27:18,25
34:8
**powers** 15:3,14,22
17:11,13,14,21
19:11,13 20:6
23:4 24:4 27:12
27:16 31:12 33:22
34:15
**practice** 43:12
**precisely** 29:1
30:24
**preclude** 51:8
**precludes** 27:12
**predecessor** 29:2
**prefer** 6:7
**preference** 15:19
16:9 31:17 32:22
34:2,3,5,7
**prejudgment** 10:6
10:24 28:18
**preliminary** 3:16

35:9
**premises** 5:4,13
**preparatory** 45:16
  45:20
**prepare** 45:25
**prepared** 13:16
**presented** 6:2,19
  7:3 14:13
**Presiding** 53:7
**presumed** 32:1
**pretty** 42:2
**prevailed** 20:17
**prevails** 31:18
**prevent** 25:4
**prevented** 33:22
**prevents** 15:4
  27:17
**previous** 21:25
**previously** 20:21
**price** 5:9,9
**primary** 10:13
**principle** 21:7
**prior** 8:18 9:19
  12:9 32:2 33:19
  51:12
**priorities** 21:8
**private** 43:12
**probably** 36:4
  38:19 43:4
**problem** 30:4 49:2
**problems** 33:15
**Procedure** 9:1,2
**procedures** 9:17
**proceed** 51:14
**proceeding** 22:23
  30:13
**proceedings** 27:6,7
  30:15,17 52:25
  53:5,9
**proceeds** 8:20
  11:15 21:15,17
  22:24 34:13,16
  39:6
**process** 5:16 46:11
**produce** 51:1
**produced** 50:22
**producing** 46:23
**production** 6:14
**profit** 22:7
**project** 43:16 44:3

44:4,11,12
**promissory** 13:1
**proper** 10:7
**properly** 29:25
  41:6
**properties** 10:3
  33:10
**property** 5:4,13,14
  5:17 7:14 8:8,15
  9:21 10:15,21
  11:2,2,5,14,18,19
  12:23 14:4 15:8
  15:10 16:15,19,21
  16:24,25 17:4,5,7
  17:8,9,21 18:1,3
  18:11,15,19 19:3
  19:5,9 20:4 21:20
  22:9,18,20,23
  23:4,17 25:14,23
  26:9,14,18 27:7
  27:13 28:20,23
  30:9,16 32:9
  34:13,13,23 35:1
  36:15 37:17,19,22
  38:6 40:5,5,7,9,15
  42:16,21,23,24
  43:2,2,5,6,14,23
  43:25 44:16,17,18
  45:15
**proposed** 11:4
**proposition** 20:2
  23:18
**prosecution** 32:14
**prospective** 26:23
**provide** 5:10 16:5
  21:12 29:18,25
  30:1
**provided** 21:5
  24:16 28:8
**Providers** 5:8
**provides** 17:18
  24:10 26:2,15
  32:13 40:18
**providing** 21:7
**provision** 29:17
**prudent** 25:20
**pulled** 43:18
**punitive** 10:23
**purchase** 5:8,12,14
  22:11 25:11 29:11

29:19
**purchased** 8:15
  10:12
**purchaser** 5:11,12
  12:9 15:5,15,23
  17:16 18:3,6,8,11
  18:18 19:1 22:16
  23:4,17,20,24
  24:2,25 25:4,5,7
  25:23 26:3,23
  27:13,16,22 28:1
  29:10,13 30:23
  31:7
**purchasers** 23:13
  29:15
**purported** 12:20
  13:1
**purpose** 21:22 30:2
  30:20
**purposes** 40:2,2
**pursuant** 41:19
  44:9
**push** 50:10
**put** 17:2 31:6 32:18
  42:23 43:23 44:18
**puts** 30:22 42:9
**puzzle** 41:24
**p.m** 1:20 52:24

## Q

**qualification** 16:18
**quality** 21:7
**question** 23:2 28:7
  28:21 31:15 39:22
  40:21 41:8 44:15
  47:1
**questions** 15:20
  16:12
**quotation** 27:9,9
**quote** 30:11

## R

**R** 3:1 53:2,2,2,2
**raised** 47:1
**Ransome** 23:22
**raw** 45:20
**reach** 4:16 19:18
**reached** 20:11
**read** 44:22 46:9
  47:10,22 49:18,19

**ready** 39:12
**real** 8:6 15:15
  17:16 18:3,10
  20:7,16 23:4
  25:23 26:3,18
  27:13 28:19,23
  30:9 34:12
**really** 28:14 30:7
  30:19 44:20 49:21
  49:25 50:1,4,12
  50:14
**reason** 15:17 22:13
  33:10
**reasonable** 49:17
**reasonableness**
  49:22
**reasoning** 34:6
**Reasonover** 22:1,5
  24:6,21
**reasons** 34:11
**Rebecca** 2:3 3:5
**recall** 49:6
**receive** 31:24 37:1
**received** 12:25
  31:25 35:4,6
  36:17 48:6
**recognize** 20:3 21:6
  21:11
**recognized** 15:9
  47:25
**record** 8:17 11:1,18
  14:4 26:12 28:11
**recordation** 25:17
  31:5
**recorded** 9:5 10:20
  11:22 13:13 14:2
  15:4,17 16:10
  18:19 22:15 23:9
  29:24 31:16 32:20
  33:12 34:5
**recording** 13:4
  14:3 18:13 23:12
  25:2,12 28:24
  32:21,22 33:4,14
  33:15 34:10
**records** 6:14,24
  14:1 25:13 30:4
**recover** 10:1 17:10
  32:25 33:1
**recovery** 24:10,17

28:15
**refer** 8:7,9
**reference** 19:8
**referenced** 13:25
**referred** 12:12
  28:14
**referring** 41:15
**refinance** 13:15
**refine** 40:3
**reflect** 9:21
**reflected** 13:25
**reformation** 23:21
**regard** 17:20
**Registration** 13:6
**regular** 14:6
**regulations** 21:20
**relate** 33:25
**relates** 32:16
**relating** 34:23
  36:14 49:10
**release** 12:8 23:8
  38:25 39:1,2,5,8
  41:20
**released** 9:5
**relief** 10:7,25 16:7
  16:8 21:12 28:10
  28:12 30:24 31:8
  32:19 33:20,24,24
  34:22 36:24 37:3
  37:16 50:21
**rely** 20:12 48:9
**remainder** 48:9
**remaining** 37:7
  46:3
**remains** 28:7
**remand** 22:4 24:14
**remanded** 22:2
  24:8
**remedial** 29:4 30:2
**remedied** 29:6,9
**remedy** 24:16 29:6
**remember** 49:3,4
**removal** 40:22
**removes** 20:4
**rent** 5:19
**reorganization** 9:9
**repair** 40:22
**replenished** 12:17
**reply** 38:14
**report** 9:20 13:16

37:21
**reported** 33:7
**Reporter** 17:12
  19:24 21:2 22:2
  25:10 28:2,3 33:7
**Reporter/Transc...**
  53:25
**Reporting** 53:3,15
**represent** 53:4
**representations**
  10:5,19
**Republic** 19:23
**repurchase** 10:24
**request** 3:17 4:18
  5:25 6:17,25 35:7
  46:14 47:5
**requested** 5:4
  32:20 35:2
**requests** 6:13 49:7
  49:9
**required** 25:12
**requires** 43:7
**requiring** 11:1
**residence** 9:18
  10:13
**resolution** 4:20
**resolve** 15:20
**resolved** 4:17 7:12
  14:25 39:10 51:9
**respect** 5:18 7:8
  9:22 10:12 17:25
  18:10 21:18 23:7
  23:25 25:2 37:16
  38:5,24 40:4,14
  40:21 41:19,23
  42:19
**respective** 14:24
**response** 8:2 46:13
  46:17
**responses** 4:14
**restitution** 23:1
**result** 14:8 19:12
  19:18 20:11 22:15
**resulting** 10:5
  23:23
**rezoning** 43:6,13
  45:3,5,11
**right** 7:9,10,17
  36:7 38:16 40:11
  44:5 45:1 50:19

**rights** 5:20 17:4,15
  17:21 26:23
**Roanoke** 25:9
**Robert** 22:21
**role** 9:11 42:11
**Rook** 23:24
**routinely** 19:13
**rule** 8:25 9:1 12:9
  14:22 29:10,14
**Rules** 8:25 9:2
**ruling** 7:16 8:24
  34:19
**rulings** 51:11
**R-1** 43:2

---

**S**

**S** 1:16 3:1 53:2,2,6
**sale** 5:2,4,9,19,25
  7:14 8:18,20 9:17
  11:4,8,13,14,16
  21:15,17 22:18
  34:17
**sales** 11:23 22:24
**Sallier** 29:6
**satisfaction** 13:24
  14:2,3
**satisfied** 52:5
**saw** 47:2,13
**saying** 33:24 43:11
  43:15,16 46:12
**says** 29:16 40:21
  41:9 45:21
**scheme** 14:16 21:6
**Schmitt** 2:23 46:5,6
  46:21 48:12,13
  50:9 51:2,11,16
**Scottrade** 6:23
**search** 25:11
**seated** 3:2
**second** 16:1 28:5
  41:8 47:14 53:17
**secondary** 12:8
**section** 16:16,23
  17:1,3,8,14 23:15
  24:9,14,17 26:1
  28:1 31:12,19
  34:15 40:17 41:5
  41:9,20
**Sections** 19:6,10
**secure** 32:24

**secured** 10:3,13,21
  12:22 13:13,17
  15:8 39:3
**securing** 10:21
  11:3 28:11 34:10
**security** 8:16 11:3
  19:15,16
**see** 17:12 28:1 47:6
  48:15 50:2
**seeing** 49:4
**seek** 24:17
**seeks** 21:6 26:17,19
  50:6
**seen** 47:10
**sell** 8:6 12:15
**selling** 15:7 22:7
**send** 5:17
**sending** 35:5
**sentence** 47:14
**separate** 5:14 6:4
  45:7
**September** 3:23,24
  9:16 11:21
**served** 52:12
**serves** 27:3
**service** 42:12
**services** 39:23 40:6
  41:2,25 44:6,14
  45:1,3 53:3,15
**servicing** 12:8
**set** 3:17,19,19 7:15
  11:24 19:13 28:13
  34:6 52:8
**setting** 14:16 26:6
  48:6
**settlement** 20:8
**seven** 33:9
**sewage** 42:23 43:21
**shorten** 38:25 39:8
**show** 6:2,19 7:3,12
  13:4 14:13 37:2
  39:12 51:2
**showed** 9:20
**Siatta** 2:3 3:5,6,12
  3:25 4:4,11,23,25
  6:3,6,9,20 7:4,6
  7:13 34:20 35:11
  35:13 36:13 37:5
  37:7 51:18 52:20
**sides** 46:10

**sign** 47:6,21,24
  48:8 49:8,9
**signature** 46:16
  47:13 48:16
**signed** 4:9 7:11
  13:2 37:19,21
  47:3,16 48:6
  49:14
**significant** 43:24
**signing** 48:24,25
  49:1,3,12
**similar** 6:21
**similarly** 21:24
**Simmons** 25:9
**simple** 18:1
**simply** 14:18,25,25
  18:9 24:24
**simultaneously**
  18:12
**site** 43:7,17
**site-improvement**
  41:4
**situated** 29:20
**situation** 34:4
**six** 7:6 9:4,4 37:8
**sixth** 13:11
**Smith** 2:15 7:24,24
  46:7,7,12 48:15
  51:12
**Snyder** 23:19
**sold** 10:19 12:7,16
  12:19 13:12 22:23
**solely** 20:10 25:2
**somewhat** 14:21
  21:10
**sophistication**
  49:21 50:4
**sorry** 7:9
**sort** 42:17
**sought** 10:22 28:10
  28:19 30:25 31:8
  33:20 34:9 36:24
**sound** 21:9
**Southeast** 25:9
**Southern** 33:6
**so-called** 17:13
**special** 17:11
**specific** 10:23
**specifically** 17:18
  26:1 31:9 40:17

**spent** 21:15
**spoken** 42:1,2
**Staff** 23:19
**stand** 52:22
**start** 3:16 46:12
**started** 40:10,15
  45:18
**state** 18:25 19:17
  22:19,22 27:21,25
  28:22 30:7 33:11
  33:14
**stated** 5:23 14:25
  18:9 25:18 32:4,5
  34:11 46:25
**statement** 12:3
  30:19 52:1
**states** 1:1,17 9:23
  22:1,25 30:7,12
  53:1,5
**station** 48:3
**status** 15:5 18:6
  25:4,6 27:22
**statute** 17:18 25:25
  26:15 29:3,4 30:3
  39:24 42:7 45:21
**statutes** 23:12
  25:12
**statutory** 15:14,22
  19:2 21:13 40:16
**stay** 22:22 33:21,22
  33:24 34:23 37:16
  50:21
**Steel** 38:6,13
**Steel's** 38:7
**Stephen** 1:16 51:24
  53:6
**steps** 45:16,20
**stop** 47:20
**Street** 53:16
**stress** 16:22
**stressed** 18:23
**strike** 50:6 51:5
**strong-arm** 15:3,14
  15:22 17:13 23:3
  24:4 27:16 31:12
  33:22
**structure** 40:7,23
  40:25 41:7,10,12
  41:16 42:20
**stuff** 49:25

**subcontractors** 44:18,19
**subject** 5:7,14,20 16:18 17:5 26:24 44:7 46:23 51:3
**subjective** 49:25
**submissions** 44:23
**submit** 34:18 45:23 52:9
**submitted** 4:9 7:8 37:3 39:9
**subparts** 51:4
**subrogation** 23:6
**Subsection** 16:21 16:22 41:5
**subsequent** 24:11 24:12,18 26:3
**subsequently** 11:19
**successful** 32:13
**successive** 38:15
**successor** 17:3 20:10
**successors** 13:8
**Sudds** 28:2
**sufficiency** 30:19
**sufficient** 25:3 30:21
**suggest** 30:21 41:13 49:24
**suggested** 25:19
**suggesting** 44:1
**Sugimura** 2:11 7:20,20
**suing** 32:9
**suit** 10:8 25:24 27:4 28:10,18 29:11,14 29:21 30:10,14,22 30:24 31:4,7,8 32:14,19 33:14,23
**sum** 10:3
**summary** 38:5,21 39:17 40:8 41:18 44:24 45:23 46:4 48:10 50:1,5 51:5
**Summit** 7:15 8:7,8 8:10,15 9:18 11:5 11:18 12:22 14:7 15:1 18:18 19:19 19:22 24:22 34:13
**SunTrust** 2:16

36:13,16
**superior** 15:10 34:14
**superiority** 20:24
**supervises** 42:11 43:20
**supervising** 42:15
**supplemental** 51:23 52:11
**support** 23:18 51:24 52:1
**supposed** 20:23
**Supreme** 29:1,8,17 32:5,11 42:1,6 44:3
**sure** 52:13
**suspicious** 50:23
**sustain** 14:20
**Sweeney** 2:9 7:18 7:19
**Systems** 13:6 21:1 21:10

**T**
**T** 53:2,2,2
**table** 27:19
**take** 3:13 4:21 38:19,21 39:16,17 52:19
**taken** 18:20
**takes** 17:5 23:17 24:2
**tale** 9:3
**talking** 46:21
**Taneja** 1:6 3:4 4:2 9:7,12 10:9 11:19 11:19,20,24 12:1 12:21 13:4 14:6 47:22 53:7
**Taneja's** 10:13,24 12:4 13:22 14:5
**technical** 29:24
**telling** 20:16
**ten** 36:13 38:22
**tenant** 5:19,21
**tenants** 11:20
**terms** 5:20 12:18 19:5 29:3 37:3 42:7 47:4,8,11 48:7

**Thank** 3:25 4:4,11 4:25 6:3,9,20 7:4 7:13 34:20 35:11 36:11 37:5,6,13 38:1,17 39:13 41:21 45:25 48:13 51:16 52:16,18,21 52:22
**theory** 20:13
**thereof** 26:7 41:12 41:15
**thereto** 23:14
**therewith** 41:11,14
**thing** 45:7 50:17
**things** 16:14 43:18 43:22 49:1,25
**think** 3:12 4:8 14:11 36:4,6 38:19,21 40:2,17 41:1,5,17,18,25 42:1,13 44:5,25 45:10,17,18,21 46:1,25 48:5 50:12 51:14 52:10
**third** 7:6 16:4 17:6 51:5,6
**thought** 48:1,24
**three** 3:22 5:1 23:19
**three-week** 38:15
**Tice** 20:12,17
**Tice's** 19:22
**time** 4:6 11:17 14:17 17:24,25 18:7 22:8 26:6 29:11 36:1 37:17 38:25 39:8 43:24 49:6
**Timothy** 2:19 39:21
**title** 9:20 11:18 13:16 16:20,24 19:23 20:9 22:16 22:20 25:8,12,14 25:25 26:6 27:6 29:21 30:16 47:18
**today** 3:14 7:11 13:11 34:19 40:2 44:24 46:23
**today's** 37:18

**told** 49:11
**total** 13:20
**totaling** 13:20
**transaction** 13:15 23:2
**transactions** 11:17
**transcript** 53:8
**transcription** 53:5
**transfer** 11:24 17:21 18:7,12 24:10,13 31:20,22 31:25 32:7,13
**transferee** 24:11,11 24:12
**transfers** 18:5
**Travelers** 39:4
**trial** 51:10,15
**tricked** 48:25 49:16 49:16,18
**true** 13:2 28:17 32:4 44:16 50:12
**trump** 15:24 18:25 34:8
**trumped** 15:13 23:5
**trust** 8:14,16 9:4 12:22 13:2,3,9,13 13:15,16,18,24 15:8,9 18:21,24 18:25 19:3,20 20:3,13,14,18,19 20:22 21:11,13,17 21:21 23:7,8,12 23:23,25 24:20 28:11 31:14 32:20 32:21 34:10 46:14 49:22,22
**trustee** 2:2 3:6 5:7 5:16 6:22 8:6 9:15,16,19 11:23 13:6,17 15:3,11 17:2,5,10,15,18 17:20 18:9,22 20:9 21:16 22:21 24:4,16,24 27:12 27:17,21,24,25 31:17,19 33:13,21 34:2,14,16,24 36:15 39:6 52:3
**trustees** 19:12

**trustee's** 4:12 5:1 6:10 11:4 15:12 15:22 19:11 20:6 23:3 27:15 31:11 34:7 35:22,25
**trying** 4:15
**turn** 37:10 39:13
**two** 5:2 10:12 23:7 28:3 37:23 40:18 40:18 51:22
**two-page** 47:13
**Tyler** 19:24
**type** 24:2
**typical** 12:13

**U**
**ultimately** 21:16 32:15 33:25
**unable** 40:1 42:9
**uncontested** 38:20 40:25 41:18
**underlying** 26:25
**understand** 50:4
**understanding** 36:22,23 42:21 46:17
**underused** 14:21
**unencumbered** 21:17
**unit** 5:8,9,18,20 6:5
**United** 1:1,17 9:23 22:1,25 53:1,5
**units** 5:2
**unlucky** 21:25
**unnecessary** 19:18
**unpaid** 5:23
**unperfected** 15:2 19:15
**unpublished** 27:14
**unrecordable** 33:11
**unrecorded** 15:24 18:21 19:15 23:12 31:13
**unrelated** 23:2
**unsecured** 2:4 33:1
**unusual** 21:10 45:14
**Urban** 4:13
**use** 19:13 41:12,14

**U.S** 1:12 21:1,10
   33:5 34:22 35:2

**V**

**v** 19:23 22:1 23:19
   23:22,24 24:19
   25:9,20 27:8,10
   29:6 30:11 32:5,6
   32:8 38:4
**vacated** 22:2 24:8
**valid** 26:24 41:9
**validity** 8:23
**valuable** 23:13
   26:4
**value** 15:5,23 24:2
   24:12,25 25:5
   42:20 43:3,9,13
   43:23 44:11,19
**various** 12:13,19
**vehicle** 36:14
**Vena** 2:21 47:7
**ventures** 12:1
**Vickers** 29:6
**victory** 20:17
**Vijay** 1:6 3:4 9:7
   11:19 53:7
**violation** 21:13
   26:12
**Virginia** 1:2,13,18
   2:6 3:10 5:18 8:7
   9:18,24 10:14,16
   18:16 23:11,15,16
   23:19,20,22,24
   24:1 25:6,21,22
   26:2,21 27:1,9,10
   28:6,16,25 29:1,7
   29:8,17 30:12
   32:5,11 34:24
   37:8,14 38:4,4
   39:2,24 40:1 42:1
   42:6 44:3 45:14
   45:21
**vitiates** 30:10
**void** 23:13
**voidable** 17:23
**voluntary** 9:8

**W**

**wages** 21:19
**want** 16:22 36:1,4

47:23,24 48:15
   52:13
**wanted** 3:16 51:22
   52:3
**Waples** 5:3
**warehouse** 12:12
   12:13,14,17
**warning** 27:5 30:14
**warranties** 10:19
**Washington** 53:18
**wasn't** 30:4 44:18
**Watson** 23:22
**way** 6:8 17:2 31:6
   32:18 46:10 47:24
**website** 4:1
**Wednesday** 35:4
**weight** 25:16
**welcome** 7:5 35:12
   36:12 38:2
**Wells** 2:10 7:20
   8:12 9:22 10:12
   10:20,20 11:5
   14:9 15:18 16:1,5
   16:8 25:2 28:12
   31:10,13,18 32:18
   32:25 34:8
**went** 14:13 21:4
   47:5
**West** 28:6
**Westlaw** 22:4
**Wexler** 51:24
**Wexler's** 52:5
**We'll** 3:3 6:9
**we're** 36:3,16 41:18
   50:10,14
**we've** 36:15
**Whitehead** 33:6
   34:6
**wife** 11:20
**William** 40:12 41:3
**willing** 3:18 46:22
**winning** 11:10
**wishes** 48:11
**withheld** 21:18,20
**Woodbridge** 10:16
   11:2
**words** 16:22 47:15
   49:10
**work** 4:19 40:13
   41:4 42:15,17,22

43:9,16,20 44:8
   51:12
**working** 35:3 36:17
   48:17
**world** 52:11
**worth** 44:14
**wouldn't** 45:9
**wrinkle** 25:1
**written** 44:22
**wrongful** 32:9,11
**Wytec** 5:8

**X**

**x** 1:6,8

**Y**

**yesterday** 4:9

**Z**

**zoning** 26:11,20
   43:2

**$**

**$1,572,738.13** 5:9
**$2,900,050** 13:18
**$2,963,217.46**
   13:21
**$3,367,000** 10:4
**$4,068,750** 11:14
**$414,278.24** 5:10
**$950,000** 33:9

**0**

**08-13293** 1:6 3:4

**1**

**1** 13:14,20 14:2
   16:16,21,23 17:3
   19:6 23:15
**1:30** 1:20 3:3
**100** 5:8,18,20
**11** 1:7 2:2 8:6 9:9
   9:14 52:2
**1101** 53:16
**111** 29:7
**11211** 5:3
**1168181** 22:4
**12** 38:3
**12th** 38:15
**13** 38:18 46:2
**131** 27:18

**14** 38:18,20
**14th** 3:23
**145** 23:22
**15** 1:11 37:10
**150** 5:9
**155** 19:25 20:14,20
**16** 11:25 38:24
**16th** 53:16
**167** 27:10 30:11
**17** 9:22 39:1
**17th** 3:22 4:22 36:8
   37:24
**18th** 3:24
**19** 9:16
**19th** 3:20 35:10
   36:6 38:9 50:25
**195** 23:24
**196** 23:24
**198** 25:20

**2**

**2** 16:22,23 19:6
**2nd** 27:8
**2,950,000-dollar**
   12:21
**2:52** 52:24
**20** 11:9 25:9 36:25
**2001** 22:4
**20036** 53:18
**2004** 6:11,12 7:6
**2007** 11:21 12:19
   12:22 13:14,20,23
   14:2 36:14
**2008** 9:16,22 10:9
   11:8,9,10,25 14:9
   18:17,19
**2009** 1:11 8:22 9:7
**206** 19:24
**21** 11:10
**21st** 11:12
**219** 22:2
**23** 11:8
**235** 21:2
**236** 22:1
**238** 22:3
**24** 13:23
**25** 12:22
**26** 11:21

**3**

**3** 17:9 19:10 28:1
   31:12
**3rd** 19:25 20:15,20
   22:3 24:20 27:18
**30** 8:22 36:5
**307** 29:7
**35** 17:13
**355** 28:2
**365** 27:10 30:12
**372** 30:12
**379** 25:21
**394** 19:24
**399** 33:7

**4**

**4** 19:10
**4th** 19:25 22:3
   24:18 27:1,14,20
   27:23 32:4
**401(k)** 21:21
**414** 22:3
**426** 24:20
**43-17** 41:20
**43-3** 40:17,18,21
   41:5,9
**473** 23:20

**5**

**5th** 38:14
**52** 8:25 14:22
**525** 28:2
**5335** 7:15 8:7 9:18
**541** 16:16 17:1,3,8
   19:4,6,10
**544** 17:14 28:1
   31:12 34:15
**547** 31:19 34:15
**55-96** 23:15
**550** 24:9,14,17
**570** 33:7

**6**

**60-day** 4:18
**615** 28:3
**65** 17:12
**669** 23:22
**67** 10:18

**7**

**7** 22:21 32:1

**7052** 9:1
**718** 19:25
**719** 24:20
**722** 20:15,20
**724** 20:15
**742** 27:8

### 8

**8** 10:8
**8.01-268** 26:1
**842** 27:8
**847** 21:2

### 9

**9** 9:7 18:17,19
**9:30** 3:22,23,24
    4:24 35:10 36:10
**90** 12:16 16:10
    31:21 33:19
**90-day** 31:17 32:2
    32:23
**91** 27:18
**955** 25:10
**96** 23:20 28:3