NOV 2 4 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

WELLS FARGO FUNDING, et al,          )
                                     )
              Appellants,            )
v.                                   )          **Bankruptcy Case No. 08-13293-**
                                     )          **SSM**
H. JASON GOLD, TRUSTEE,              )          **Civil Action No. 1:09-cv-00817**
                                     )
              Appellee.              )

## Memorandum Opinion

This bankruptcy appeal arises from each of the four sets of Appellants' purchase

of separate $2,950,000 mortgage loans covering the same residential property.[1] The

borrower and residence owner, Vijay K. Taneja ("Taneja" or "Debtor"), and several of

his corporate affiliates filed voluntary Chapter 11 petitions on June 9, 2008. The

Bankruptcy Court granted the bankruptcy trustee's motion to authorize the sale of that

residential property free and clear of liens or other interests on May 28, 2009. Appellants

filed their Notice of Appeal of that decision (Dkt. no. 1) with this Court on July 23, 2009.

This Court denied Appellee Gold's Motion to Dismiss the Appeal as Equitably

Moot on September 15, 2009 and heard oral arguments on the appeal on October 9, 2009.

For the reasons that follow, the judgment of the Bankruptcy Court is hereby AFFIRMED.

### I.     Background

This appeal arises from the remnants of a mass mortgage fraud scheme

perpetrated in 2007 by the Debtor, Vijay K. Taneja. The property centrally at issue in

this case is a residential home located at 5335 Summit Drive, Fairfax, Virginia ("Summit

---

[1] Each of the four Appellant Banks filed notices of appeal. The Court entered an order consolidating the appeals for administrative convenience on August 7, 2009.

1

Drive Property") owned by Taneja.  Taneja initially deeded the home to his own shell company, Financial Mortgage Inc. ("FMI"), for a $2.95 million loan, and FMI recorded the deed in the land records for the Circuit Court of Fairfax County on January 25, 2007. FMI then sold a note on that loan to a number of different lenders, each for $2.9 million. To "secure" the notes, FMI transferred each creditor a deed of trust to the Summit Drive property.  Only one deed of trust was ever recorded on the property by IndyMac Bank, and this deed was recorded on February 1, 2007.  Taneja successfully paid off one of the mortgages – that belonging to IndyMac Bank – and IndyMac then filed a certificate of satisfaction with the County, clearing the land records of encumbrances on the title.

On June 9, 2008, Taneja and several corporate affiliates which Taneja owned filed a voluntary petition for Chapter 11 relief in the Bankruptcy Court for the Eastern District of Virginia.  Among the assets in Taneja's estate was the Summit Drive Property. Trustee Gold moved for authority to sell the home and use the proceeds to pay various professionals working on the bankruptcy estate, who would then determine the best way to maximize any assets the estate might obtain. Apparently the only significant assets or sources of capital are from claims by the estate against coconspirators in the mortgage fraud.

Trustee Gold prevailed below on the issue of the use of the proceeds of the sale of the Summit Drive property.  After the Bankruptcy Court granted Gold's motion, Appellants sought, and were denied, a stay in the bankruptcy court below.  Trustee Gold then proceeded with the sale of the home, which resulted in proceeds of $3,392,431.29. Appellee Memo. at 5.  A large amount of these proceeds has already been distributed –

2

since June 12, 2009, $2,225,445.25 has been paid to "creditors, including professionals providing services to the estate." *Id.* at 6.

## II.   Standard of Review

Issues on appeal from the Bankruptcy Court which present questions of law are reviewed *de novo* by the District Court. *See In re Johnson*, 960 F.2d. 396 (4th Cir. 1992).[2] The findings of fact by the Bankruptcy Court may be overturned only if clearly erroneous. *See* Fed. R. Bankr. P. 8013. Mixed questions of law and fact must be separated out and the Court must apply the appropriate standard of review to each. *See Hoffman & Schreiber v. Medina*, 224 B.R. 556 (D.N.J. 1998).

## III.   Proceedings Below

On September 19, 2008, the Trustee filed a "Motion to Establish Procedures for the Auction of 5335 Summit Drive, Fairfax, Virginia and to Authorize Sale of Such Property Free and Clear of Liens and Other Interests." On October 3, 2008, several creditors filed objections to the sale of the property on the grounds that they had a lien on the property. On May 28, 2009, following an evidentiary hearing and oral ruling, the Bankruptcy Court entered an Order Denying Equitable Lien Claims of Summit Drive Objectors. The creditors now appeal that ruling, their appeals having since been consolidated and now appearing before this Court in a single appeal.

## IV.   Issues on Appeal

Appellants raise two primary issues on appeal: 1) whether the bankruptcy court erred in deciding that the bankruptcy trustee's "strong arm" powers trump the equitable liens

[2] Appellants argue that, to the extent Appellee Gold argues that the Bankruptcy Court erred below in its conclusions of law, Gold should be precluded from doing so because he failed to file his own cross appeal. However, the Court finds this debate unnecessary, as it reviews the Bankruptcy Court's conclusions of law *de novo* and maintains the capacity to interpret the law regardless of the postures of the respective parties.

and constructive trusts asserted by the Summit Drive Creditors; and 2) whether the

bankruptcy court erred in deciding that Wells Fargo's *lis pendens* on the Summit Drive

Property did not prevent the bankruptcy trustee from taking the proceeds from the sale

thereof free and clear of the liens.

V.    **Analysis**
      a. **The Bankruptcy Court did not err in holding that the bankruptcy
         trustee's "strong arm" powers trump Appellants' claims to
         constructive trusts.**

The Bankruptcy Code affords a bankruptcy trustee certain powers pursuant to 11

U.S.C. § 544. Often referred to simply as the Trustee's "strong-arm" powers, these

powers include the right to avoid transfers or obligations of the debtor that would be

avoidable by a hypothetical lien creditor, 11 U.S.C. § 544(a)(1), and transfers or liens

avoidable by a hypothetical bona fide purchaser of real property. 11 U.S.C. § 544(a)(3).

Appellants argued below that the Summit Drive Property was impressed with a

constructive trust in their favor at the moment FMI fraudulently conveyed each note to

each creditor. However, the Bankruptcy Court held that the bankruptcy trustee's strong-

arm powers under § 544(a) negated the need to address whether the Summit Drive

Property was impressed with a constructive trust in favor of Appellants. As mentioned

above, §544(a) puts the trustee in the same position as a hypothetical bona fide purchaser

of real property. The Bankruptcy Court correctly concluded that "under Virginia law a

bona fide purchaser for value takes free and clear of the type of equitable claims that the

[Appellants] do here and accordingly the trustee under his strong-arm powers does the

same." Tr. at 24.

Appellants sought to invoke 11 U.S.C. § 541(d), a statutory exclusion from the

bankruptcy estate of property held by the debtor in trust for another, which would give

4

Appellants priority in the land were the property impressed with a constructive trust. Accordingly, Appellants argue that the Bankruptcy Court erred in holding that Trustee Gold's "strong arm" powers under 11 U.S.C. § 544 trumped the equitable liens and constructive trust which Appellants argue gave them rightful priority to the property because if a constructive trust were imposed, Taneja would have held legal title, but not equitable title to the Summit Drive Property.

Under 11 U.S.C. § 541(d), only legal title to property held in trust for another comes into the estate under §541(a)(1) and (2), but equitable title remains outside the estate. Accordingly, Appellants argue, Judge Mitchell should have determined that §541(d) provides a basis upon which their claim to the property remained superior to that of the Trustee, because their equitable interest in the property never came within the purview of the bankruptcy estate. However, Judge Mitchell read §541(d) as follows:

> "[t]hat exclusion which is in [§]541(d) is by its expressed terms applicable only to property coming into the bankruptcy estate under Sections 541(a)(1) and (2)...[t]he exclusion does not reference and has no applicability to property coming into the bankruptcy estate under Sections 541(a)(3) and (4) through exercise of the trustee's avoidance powers.

Tr. at 19: 4-11. Thus, as Judge Mitchell saw it, Appellants could not invoke §541(d) to keep their equitable interests outside of the bankruptcy estate. On this point, the Court finds the Bankruptcy Court reliance on *Reasonover I* well placed. 236 B.R. 219, 226-29 (Bankr. E.D.Va. 1999). Though this Court acknowledges *Reasonover I* is not squarely on point because it was commenced by a bankruptcy trustee filing a complaint under § 544(a), rather than the after-the-fact analysis presented here, Judge Mitchell's analysis in *Reasonover I* is nonetheless illustrative. Particularly informative is the Bankruptcy Court's analysis of the legislative history which notes that §541(d) was

amended specifically to include *only* subsections (a)(1) and (2). *Id.* The implication from Judge Mitchell's opinion is clearly that he believed the property came into the estate in a fashion provided for under §541(a)(3), pursuant to the trustee's "avoidance powers," and not under § 541(a)(1) and § 541(a)(2), which would then render §541(d) inapplicable as discussed above. This Court is unable to conclude that Judge Mitchell was mistaken, especially in consideration of "Consent Order Avoiding Fraudulent Transfer of Real Property Pursuant to 11 U.S.C. §§548, 550 and 551" submitted by Gold.[3]

Accordingly, the Court affirms Judge Mitchell's conclusion that the trustee's avoidance powers would overcome any of Appellants' equitable claims. More importantly, a conclusion to the contrary would contravene the Bankruptcy Code's underlying goal of aiding "the court in the administration of a bankruptcy estate so as to bring about a ratable distribution of assets among the bankrupt's creditors." *Nat'l Energy & Gas Transmission, Inc. v. Liberty Elec. Power, LLC*, 492 F.3d 297, 301 (4th Cir. 2007)(citations omitted). Thus, Judge Mitchell was also correct in declining to reach the issue of a constructive trust, as the trustee could trump that equitable claim under §544(a).

**b. The Bankruptcy Court did not err in deciding that Wells Fargo's *lis pendens* on the Summit Drive Property did not prevent the bankruptcy trustee from taking the proceeds from the sale thereof free and clear of the liens.**

Mid-way through his considered opinion, Judge Mitchell recognized that one of the Appellants, Wells Fargo, filed a notice of *lis pendens* prior to Taneja's filing for

---

[3] Appellants stress that the consent order was entered into with the understanding that it would be "without any prejudice" to either party's rights to make future arguments regarding priority in the property, and that Gold should not now be able to rely upon the order in arguing that the estate did, in fact, come into the estate under the §541(a)(3). However, from the record before the Court, including the transcript of the proceeding discussing the "Consent Order," the circumstances surrounding the order are still ambiguous to this Court. The Court defers to the fact that Judge Mitchell was better-situated to understand those proceedings and still concluded that §541(d) is inapplicable here.

bankruptcy. Thus, according to Judge Mitchell, the trustee could *not* use his §544(a)(3) powers to avoid Wells Fargo's unrecorded deed of trust. However, the Bankruptcy Court ultimately found in favor of the trustee by looking to another of the trustee's avoidance powers contained in 11 U.S.C. §547. Thus, Judge Mitchell's holding implicates both the underlying effect of a *lis pendens* in Virginia and another of the bankruptcy trustee's set of avoidance powers, those found in §547.

### i. The Bankruptcy Court correctly concluded that Wells Fargo's *lis pendens* destroyed the trustee's status as a bona fide purchaser.

A memorandum of *lis pendens* is a means by which a party gives constructive notice to any prospective purchaser of property that the purchaser takes the property subject to a potential valid judgment. *Bray v. Landergren*, 161 Va. 699, 713 (1934) ("A *lis pendens* is not a seizure. It is restrictive only and but serves to warn others that rights which they may acquire will be subject to any valid judgment entered"). A trustee cannot exercise the avoidance powers of a "bona fide purchaser" if he is on notice, constructive or actual, of another's interest in the property. *See* Virginia Code § 8.01-268. A *lis pendens*, however, in and of itself does not create or enforce a lien. The Bankruptcy Court found that because one of the Appellants, Wells Fargo, filed a *lis pendens*,[4] the trustee could *not* use his §544(a)(3) powers to avoid Wells Fargo's unrecorded deed of trust. However, the Bankruptcy Court ultimately still found in favor of the trustee by looking to 11 U.S.C. §547. This Court affirms Judge Mitchell's holding on this point.

### ii. Whether the *lis pendens* is a "transfer" that can be avoided by under §547.

Section 547 empowers a bankruptcy trustee to avoid any transfer – defined to include the fixing or perfection of a lien occurring within 90 days of filing the bankruptcy

---

[4] As Appellants themselves note, the suit with which the *lis pendens* was concerned "was not litigated to a resolution, judgment was not entered in Wells Fargo's favor, and the *lis pendens* never perfected a lien for an antecedent debt." Appellants Br. at 16.

petition – if the transfer is due to an antecedent debt or is made while the debtor is

insolvent and would thereby allow the debtor to receive more than if the transfer had not

been made and rather just received a distribution under Chapter 7. Specifically, §547, in

pertinent part, provides:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made--
>>> (A) on or within 90 days before the date of the filing of the petition; or
>>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>> (5) that enables such creditor to receive more than such creditor would receive if--
>>> (A) the case were a case under chapter 7 of this title;
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
>
> ...
> (e)(1) For the purposes of this section--
>> (A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and
>> (B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.
>
> ...
> (g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

> 11 U.S.C. §547.

Judge Mitchell explicitly held that the *lis pendens* "does not operate as a transfer or create a lien." Tr. at 32:5-6. The problem is, then: if the *lis pendens* was not a "transfer," what was "avoided" by the trustee under § 547? Judge Mitchell answered this inquiry by looking to the prospective effect of successful suit underlying the *lis pendens*. That, Judge Mitchell said, would operate as avoidable occurrence under §547, and that such an occurrence would necessarily relate back to the date of the filing of the *lis pendens*, thereby placing it within §547's 90-day avoidance period.

Appellee Gold argues that the Bankruptcy Court erred in holding that a *lis pendens* is not a "transfer" under §547. Gold further asserts that Appellants seek to have "have it both ways" by arguing that a *lis pendens*, unlike a properly recorded deed of trust, fails to rise to the level of a transfer for purposes of § 547, while at the same time arguing that the *lis pendens* trumps the Trustee's strong-arm powers in the manner that only a properly recorded security interest is capable. Appellants respond by arguing that a *lis pendens* can provide sufficient notice to defeat the protected status of a bona fide purchaser without rising to the level of a "transfer" for the purposes of §547.

Even a cursory review of case law on this question reveals a significant disparity among other courts' interpretations of §547. *Compare In re Perosio*, 364 B.R. 868 (N.D.N.Y. 2006), *In re Leitner*, 236 B.R. 420, 426 n.19 (Bkrtcy.D.Kan. 1999)(filing of *lis pendens* did not constitute an avoidable transfer) with *In re Gruseck & Son, Inc.*, 385 B.R. 799 (Table) (6th Cir. BAP 2008), *Rice v. First Ark. Valley Bank (In re May)*, 310 B.R. 405, 415 (Bankr. E.D. Ark. 2004)(a *lis pendens* is a "transfer" for the purposes of §547).

The bankruptcy code provides that the term "transfer" means:

(A) the creation of a lien;

(B) the retention of title as a security interest;

(C) the foreclosure of a debtor's equity of redemption; or

(D) each mode, direct or indirect, absolute or conditional, voluntary or
   involuntary, of disposing of or parting with--
   (i) property; or
   (ii) an interest in property.

11 U.SC. §101(54). Obviously the term "*lis pendens*" is absent from the Code's definition of "transfer." *Id*. Those courts that do consider a *lis pendens* an avoidable transfer under §547 draw upon the effect of a *lis pendens* on a prospective purchaser. *See In re Lane*, 980 F.2d 601 (9th Cir. 1992). That is, the argument can be made that a *lis pendens* works to perfect an interest encumbering a property, thereby affecting the order of preference in the property, just like those acts which are delineated in the Code's definition of "transfer." Indeed, "[t]he recording of *lis pendens*...constitute[s] a transfer of some interest in property, since at a minimum, such recording operates to encumber property and detract from the rights of the property owner." *(In re May)*, 310 B.R. at 415.

On the other hand, before §547 can be invoked, a *lis pendens* must be demonstrated to be a transfer under the applicable state law – here, Virginia – before proceeding to analysis under the Bankruptcy Code. *See In re Perosio*, 364 B.R. at 872. Thus, in states which consistently hold that "the filing of a *lis pendens* is merely a method of giving notice and does not create a lien" avoidance under §547 may be inappropriate as Appellants argue. *Id*.

Under Virginia law, the filing of a memorandum *lis pendens* neither creates nor enforces a lien. *In re Hart*, 24 B.R. 821 (Bankr.E.D.Va.1982). As Judge Mitchell noted, the Fourth Circuit instructs that under Virginia law, the "filing of the *lis pendens* pursuant to Va. Code Ann. § 8.01-268...serve[s] merely as 'notice of the pendency of the suit to

any one interested and a warning that he should examine the proceedings therein to ascertain whether the title to the property was affected or not by such proceedings." *Green Hill Corp. v. Kim*, 842 F.2d 742, 744 (4th Cir. 1988) (citing *Harris v. Lipson,* 167 Va. 365, 189 S.E. 349 (1937)). This Court is again in accord with Judge Mitchell's reading of Virginia law regarding the definition of a *lis pendens*.

Judge Mitchell then went on, however, to reconcile his holding that a *lis pendens* is not itself a transfer with the applicability of §547 by holding that any transfer that *would* arise from the *lis pendens* necessarily relates back to the date of the filing of the *lis pendens*. Tr. 31-33. In doing so, Judge Mitchell looked to *In re Whitehead*, a bankruptcy decision from the Southern District of Florida applying Florida law, for this relation-back proposition. 399 B.R. 570 (Bankr. S.D.Fla. 2009).

On this point the Court affirms the reasoning of Judge Mitchell. It is clear that the purpose of §547, like the trustee's other avoidance powers under the Code, is to encourage an expedient and just disposition of the debtor's estate and to "discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." S.Rep. No. 989, 95th Cong., 2nd Sess. 88 (1978). Entangling the estate with unmerited claims to property and evasive disposals of property are thus frowned upon by the Code.

To this end, Judge Mitchell's specific reliance on *In re Whitehead* is telling. Tr. at 33-34. In that case, the bankruptcy judge in the Southern District of Florida held that a *lis pendens* did function as an avoidable transfer under §547. This was because although Florida precedent, like Virginia's, held that a *lis pendens* did not create a lien, "the express provisions of 11 U.S.C. § 547(e)(1) do not require that a lien be created in order

for an interest in the property to be transferred." *Id.* at 573.   Rather, "by putting the world

on notice of his equitable claim to the properties, [the party filing the lis pendens]

acquired an interest superior to that of a hypothetical future bona fide purchaser" which

suffices under §547. *Id.* In other words, filing a *lis pendens* certainly does not create a

lien, but it is a "consequential action" which §547 permits the trustee to avoid, provided it

occurs within the requisite 90-day period. *Id.* As such, although Judge Mitchell did hold

that a *lis pendens* is not a "transfer," his ultimate reliance on §547 aligns itself well with

the underlying purposes of the Bankruptcy Code and the Virginia recording statute.

## VI.   **Conclusion**

For the foregoing reasons, the judgment of the Bankruptcy Court is hereby

AFFIRMED.  An appropriate order shall issue.

Alexandria, Virginia
November 24, 2009

/s/
Liam O'Grady
United States District Judge

12